OSCN Found Document:DANI v. MILLER

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 DANI v. MILLER
2016 OK 35
Case Number: 114482
Decided: 03/29/2016
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2016 OK 35, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

ROBERT N. DANI, as a resident beneficiary taxpayer claimant of the STATE OF OKLAHOMA UNIFORM UNCLAIMED PROPERTY ACT TRUST and for the benefit of all the other 938,021 (more or less) resident and non-resident beneficiary claimants of the Trust, Plaintiff/Appellant,
v.
(1) KEN MILLER, in his official capacity as TREASURER OF THE STATE OF OKLAHOMA and TRUSTEE OF THE STATE'S UNIFORM UNCLAIMED PROPERTY ACT TRUST; and (2) STATE OF OKLAHOMA; and (3) JOHN DOE and/or MARY DOE, Attorneys for the State of Oklahoma and/or State officials, etc. for legal malpractice in their advice that the Uniform Unclaimed Property Act Trust was lawful and constitutional in its use of private trust funds for the State of Oklahoma profits, Defendants/Appellees.

ON APPEAL FROM THE DISTRICT COURT OF OKLAHOMA COUNTY
HONORABLE THOMAS E. PRINCE
DISTRICT JUDGE

¶0 An owner of unclaimed property filed suit in the District Court of Oklahoma County seeking relief, including damages, declaratory relief, and injunctive relief challenging the constitutionality and administration of the Oklahoma Uniform Unclaimed Property Act, 60 O.S. §§ 651-688. The State Treasurer in his official capacity, and other defendants, moved to dismiss the petition for failure to state a claim for which relief could be grated pursuant to 12 O.S. 2011 § 2012(B)(6). The property owner moved for summary judgment. The trial court granted the defendants' motion to dismiss and denied the property owner's motion for summary judgment, and the property owner appealed.

ORDER OF THE TRIAL COURT IS AFFIRMED

Jerry R. Fent, Oklahoma City, OK, for Plaintiff/Appellant.
Ted Pool, Oklahoma City, OK, for Plaintiff/Appellant.
Jared B. Haines, Assistant Solicitor General, and Mithun S. Mansinghani, Deputy Solicitor General, Oklahoma City, OK, for Defendants/Appellees Ken Miller, State Treasurer of Oklahoma, and the State of Oklahoma.

COMBS, V.C.J.:

¶1 The question presented to this Court is whether the trial court properly granted Defendants/Appellees' motion to dismiss the action for failure to state claims upon which relief may be granted, and denied Plaintiff/Appellant's motion for summary judgment. We hold in the affirmative, and affirm the trial court's order.

FACTS AND PROCEDURAL HISTORY

¶2 Plaintiff /Appellant Robert N. Dani (Appellant) is an Oklahoma resident and taxpayer. Certain property belonging to Appellant was handed over to the State Treasurer pursuant to the Uniform Unclaimed Property Act (UUPA), 60 O.S. §§ 651-688, because it was presumed abandoned. This property consisted of $19.56, received in 2004 and submitted by Chevron/Texaco, as well as $150.00, received in 2013 and submitted by Office Depot, Inc. Appellant filed a claim for this property on or about January 16, 2014. His claim was approved, and a check was issued to Appellant for $169.56 on April 17, 2014.

¶3 On June 22, 2015, Appellant filed suit in Oklahoma County District Court against Defendants/Appellees (collectively, "State"), seeking damages, declaratory relief, and injunctive relief, concerning the constitutionality and administration of the UUPA. Appellant's first causes of action center on the alleged creation of a trust by the UUPA, and he argues: 1) the UUPA is a "public trust," having the State Treasurer as trustee and private parties such as Appellant as the beneficiaries; 2) UUPA provisions that require transfer of funds not held as reserve in the UUPA's Unclaimed Property Fund to the State of Oklahoma's General Revenue Fund violate trust obligations; and 3) the UUPA's requirement that interest and income accruing in the Unclaimed Property Fund's principal be paid to the general revenue fund violates trust obligations.

¶4 Appellant also asserts the UUPA is a "Ponzi scheme". He then sets out causes of action detailing alleged violations of the United States and Oklahoma Constitutions, including: 1) the statutorily-required transfers to the General Revenue Fund create a debt in violation of Okla. Const. art. 10, § 23; and 2) the statutorily required transfers violate the U.S. Constitution's prohibition on takings without just compensation, the Due Process Clause and the Equal Protection Clause of the United States Constitution, as well as the due process protection of Okla. Const. art. 2, § 7.

¶5 Appellant further alleges that by committing the above-described acts, state officials violated their oaths of office and unnamed attorneys for the state committed legal malpractice. Finally, Appellant asserts no statute of limitations bars his claim and that sovereign immunity does not apply.

¶6 On July 16, 2015, the State filed a Motion to Dismiss Appellant's Petition. The State asserts generally that the UUPA complies with all constitutional requirements and the State Treasurer's administration of the Unclaimed Property Fund complies with the UUPA and any duties as a trustee. Specifically, the State argues: 1) Appellant's trust arguments fail to state a claim, and even if they do, whether the UUPA creates a public trust as provided for in 60 O.S. 2011 § 176 is irrelevant; 2) the UUPA does not create an obligation that binds future legislators to appropriate money for a certain purpose, and therefore does not create an unconstitutional debt in violation of Okla. Const. art. 10, § 23; 3) Longstanding State and Federal precedent upholding the constitutionality of state unclaimed property statutes defeats Appellant's other Constitutional claims; 4) Appellant's statute of limitations claim, oath claim, and malpractice claim are not legally cognizable; and 5) any claims for damages are precluded by sovereign immunity.

¶7 While the State's Motion to Dismiss was pending, Appellant filed a Motion for Summary Judgment on August 31, 2015. The trial court held a hearing to consider both motions on October 7, 2015. In a journal entry filed on November 4, 2015, the trial court granted the State's Motion to Dismiss as to all of Appellant's causes of action, and denied Appellant's Motion for Summary Judgment. The trial court determined: 1) sovereign immunity precluded monetary damages in the case; 2) none of the provisions of the UUPA effectuate an unconstitutional taking; and 3) Appellant's other causes of action failed to state a claim on which relief could be granted for the reasons articulated by the State in its Motion to Dismiss.

¶8 Appellant appealed the trial court's ruling, and filed his Petition in Error pursuant to Rule 1.36, Oklahoma Supreme Court Rules, 12 O.S. Supp. 2013, Ch. 15, App. 1, on November 30, 2015. In his Petition in Error, Appellant argues the trial court erred when it denied his Motion for Summary Judgment and granted the State's Motion to Dismiss. Appellant asserts: 1) the UUPA is a "public trust" having the Treasurer as a trustee and private parties as beneficiaries; 2) the UUPA provisions requiring transfer of funds not held as reserve to the State's General Revenue Fund violate trust obligations; 3) the UUPA requirement that interest and income accruing in the Unclaimed Property Fund's principle be paid to the State's General Revenue Fund violates trust obligations; 4) the UUPA is a "Ponzi scheme"; 5) transfers from the Unclaimed Property Fund to the State's General Revenue Fund create a debt in violation of Okla. Const. art. 10, § 23; and 6) transfers from the Unclaimed Property Fund to the State's General Revenue Fund violate the U.S. Constitution's prohibition on takings without just compensation, Due Process Clause, and Equal Protection Clause, as well as the due process protections of Okla. Const. art. 2, § 7.[1]

¶9 Appellant filed a Motion to Retain in the Supreme Court on November 30, 2015, which this Court granted on December 22, 2015.[2] The cause was assigned to this office on December 29, 2015. There is a pending Motion to Set Oral Argument Before This Court En Banc filed by Appellant on November 30, 2015. This motion is denied.

STANDARD OF REVIEW

¶10 Motions to dismiss are generally viewed with disfavor, and the standard of review before this Court is de novo. Ladra v. New Dominion, LLC, 2015 OK 53, ¶8, 353 P.3d 529; Simonson v. Schaefer, 2013 OK 25, ¶3, 301 P.3d 413; Hayes v. Eateries, Inc., 1995 OK 108, ¶2, 905 P.2d 778. The purpose of a motion to dismiss is to test the law that governs the claim, not the underlying facts. Wilson v. State ex rel. State Election Bd., 2012 OK 2, ¶4, 270 P.3d 155; Darrow v. Integris Health, Inc., 2008 OK 1, ¶7, 176 P.3d 1204; Zaharias v. Gammill, 1992 OK 149, ¶6, 844 P.2d 137. Accordingly, when considering the legal sufficiency of the petition the court takes all allegations in the pleading as true together with all reasonable inferences that may be drawn from them. Ladra, 2015 OK 53, ¶8; Simonson, 2013 OK 25, ¶3; Fanning v. Brown, 2004 OK 7, ¶4, 85 P.3d 841. A plaintiff is required neither to identify a specific theory of recovery nor to set out the correct remedy or relief to which the plaintiff may be entitled. Gens v. Casady School, 2008 OK 5, ¶8, 177 P.3d 565; Darrow, 2008 OK 1, ¶7; May v. Mid-Century Ins. Co., 2006 OK 100, ¶10, 151 P.3d 132.

¶11 If relief is possible under any set of facts which can be established and is consistent with the allegations, a motion to dismiss should be denied. Gens, 2008 OK 5, ¶8; Darrow, 2008 OK 1, ¶7; Lockhart v. Loosen, 1997 OK 103, ¶4, 943 P.2d 1074. A motion to dismiss is properly granted only when there are no facts consistent with the allegations under any cognizable legal theory or there are insufficient facts under a cognizable legal theory. Wilson, 2012 OK 2, ¶4; Darrow, 2008 OK 1, ¶7; Lockhart, 1997 OK 103, ¶5.[3] Where not all claims appear to be frivolous on their face or without merit, dismissal for failure to state a claim upon which relief may be granted is premature. Gens, 2008 OK 5, ¶8; Washington v. State ex rel. Dept. of Corrections, 1996 OK 139, ¶12, 915 P.2d 359. The party moving for dismissal bears the burden of proof to show the legal insufficiency of the petition. Ladra, 2015 OK 53, ¶8; Simonson, 2013 OK 25, ¶3; Tuffy's, Inc. v. City of Oklahoma City, 2009 OK 4, ¶6, 212 P.3d 1158.

I.

THE UNIFORM UNCLAIMED PROPERTY ACT, 60 O.S. §§ 651-688

¶12 Appellant's causes of action all concern Oklahoma's Uniform Unclaimed Property Act (UUPA), 60 O.S. §§ 651-688. Some background on how the UUPA functions is useful prior to delving into Appellant's arguments on appeal. The UUPA provides a comprehensive scheme for reporting, collection, maintenance, distribution, and escheat[4] of tangible and intangible property deemed abandoned by its provisions. Quail Creek Golf and Country Club v. Okla. Tax Comm'n, 1996 OK 35, ¶6, 913 P.2d 302; Lincoln Bank and Trust Co. v. Okla. Tax Comm'n, 1992 OK 22, ¶3, 827 P.2d 1314.

¶13 The UUPA specifies types of property that are presumed abandoned after a period of time, usually several years, in the absence of any action by or contact with the person or entity holding the property. See generally 60 O.S. 2011 §§ 651.1 - 658.1A. The UUPA requires the holders of property, tangible or intangible, presumed abandoned and subject to custody as unclaimed property under the UUPA to file a report concerning the property with the State Treasurer. Title 60 O.S. Supp. 2013 § 661. It is then the responsibility of the State Treasurer to publish notice of abandoned property. Title 60 O.S. 2011 § 662.

¶14 The holders of abandoned property, upon filing the required report, are also required to pay or deliver the abandoned property to the State Treasurer, 60 O.S. 2011 § 663, and are relieved from liability once they have done so and the State assumes custody and responsibility for the safekeeping of the property. Title 60 O.S. 2011 § 664. Generally, once the State Treasurer has taken custody of abandoned property it is deposited in the Unclaimed Property Fund. Title 60 O.S. 2011 § 668(A) provides in pertinent part:

[t]here is hereby created in the State Treasury the "Unclaimed Property Fund", the principal of which shall constitute a trust fund for persons claiming any interest in any property delivered to the state under the Uniform Unclaimed Property Act and may be invested as hereinafter provided and shall not be expended except as provided in the Uniform Unclaimed Property Act. All funds received under the Uniform Unclaimed Property Act, including the proceeds from the sale of abandoned property under Section 667 of this title, shall forthwith be deposited by the State Treasurer in the Unclaimed Property Fund, herein created..

Title 60 O.S. 2011 § 669 vests the State Treasurer with authority to control the fund, and provides:

[t]he State Treasurer is hereby vested with authority and the responsibility for the control and management of all monies in the Unclaimed Property Fund as provided for in the Uniform Unclaimed Property Act. It shall be the duty of the State Treasurer to take such steps as may be necessary to preserve the principal of monies accruing to the Unclaimed Property Fund as a trust for persons claiming any interest in any property delivered to the state pursuant to the provisions of the Uniform Unclaimed Property Act.

The UUPA provides a process by which the owners of abandoned property may file a claim to recover their property, or the value of their property if it was sold pursuant to provisions of the act. Title 60 O.S. 2011 § 674. The State Treasurer is required to consider these claims, hold a hearing if necessary and if the claim is approved, pay the claim from the Unclaimed Property Fund. Title 60 O.S. 2011 § 675.

¶15 However, the UUPA contemplates and accounts for the fact that not all owners of abandoned property will seek to recover it. The UUPA therefore creates a system where a reserve is maintained in the Unclaimed Property Fund to pay approved claims and the remainder is deposited to the General Revenue Fund for use by the state. Specifically, 60 O.S. 2011 § 670 provides:

[t]he State Treasurer shall determine, from time to time, what amount of unclaimed property in custody should be retained as a reserve in order to ensure that all claims presented by persons legally establishing a right to any unclaimed property shall be paid promptly. In making such determination, the State Treasurer shall take into account the following:

1. The actual experience of other states having unclaimed property laws, as to the amount of claims presented and established as compared to the total amount of property taken into state custody;

2. Such actuarial or other experience or statistics as may be available to show the frequency of the discovery of missing persons or their unknown heirs;

3. Any other discoverable and relevant data having a tendency to establish the amount of reserve necessary for the purpose stated in this section.

The State Treasurer, after having found and determined the reserve necessary as stated in this section, shall pay all amounts in custody in excess of the necessary reserve into the State Treasury to the credit of the General Revenue Fund.

When monies are deposited to the credit of the General Revenue Fund, all rights of any owner of unclaimed property to resort against the money so paid into the General Revenue Fund shall terminate, but the right of any person legally establishing a claim to any property right which has been taken into the custody of the State Treasurer shall be preserved and the value thereof shall be paid from such reserve.

The UUPA also provides for the hypothetical scenario in which the reserve is insufficient to pay established claims. Title 60 O.S. 2011 § 671 provides:

[i]f, at any time, the reserve as provided for in the Uniform Unclaimed Property Act is insufficient to pay in full established claims, the State Treasurer immediately shall:

1. Redetermine, on the basis of past experience, the percentage necessary to be maintained in the reserve; and

2. Cease to make any payments to the General Revenue Fund until:

a. all validly established claims as provided for in the Uniform Unclaimed Property Act have been paid, and

b. there is accumulated in the reserve the sum required to be kept therein under the redetermination, whereupon the State Treasurer shall resume payments to the General Revenue Fund in accordance with the terms of the Uniform Unclaimed Property Act.

¶16 The UUPA thus protects the owners of unclaimed property by providing an orderly system of recovery for presumably abandoned property while simultaneously ensuring that the State and general public receive the benefits of such property rather than allowing holders of abandoned property to reap windfalls when a statute of limitations would cut off recovery from rightful owners.

II.

APPELLANT'S NON-CONSTITUTIONAL CLAIMS 

A. Appellant's trust allegations are without merit.

¶17 Appellant asserts the language of 60 O.S. 2011 § 668 creates a trust from the Unclaimed Property Fund. Title 60 O.S. 2011 § 668(A) provides in pertinent part:

[t]here is hereby created in the State Treasury the "Unclaimed Property Fund", the principal of which shall constitute a trust fund for persons claiming any interest in any property delivered to the state under the Uniform Unclaimed Property Act and may be invested as hereinafter provided and shall not be expended except as provided in the Uniform Unclaimed Property Act. (Emphasis added).

Appellant also asserts that 60 O.S. 2011 § 669 creates trust beneficiaries from persons claiming any interest in property delivered to the State pursuant to the UUPA and makes the State Treasurer the trustee. Title 60 O.S. 2011 § 669 provides:

[t]he State Treasurer is hereby vested with authority and the responsibility for the control and management of all monies in the Unclaimed Property Fund as provided for in the Uniform Unclaimed Property Act. It shall be the duty of the State Treasurer to take such steps as may be necessary to preserve the principal of monies accruing to the Unclaimed Property Fund as a trust for persons claiming any interest in any property delivered to the state pursuant to the provisions of the Uniform Unclaimed Property Act. (Emphasis added).

Appellant further asserts that the Treasurer's required actions under 60 O.S. 2011 §§ 670-672, concerning the reserve and transfer of excess abandoned property to the General Revenue Fund, violate the trust obligations created by 60 O.S. 2011 §§ 668 & 669.

¶18 This Court need not address the question of whether the UUPA creates a trust under Oklahoma law.[5] The question has no bearing on the determination of the propriety or impropriety of the trial court's grant of dismissal on this claim. Whether a trust is created or not, the terms of the UUPA control. In construing the terms of an instrument creating a trust, the intention of the settlor of the trust should control when such intention is not in conflict with established principles of law. In re Will of Dimick, 1975 OK 10, ¶10, 531 P.2d 1027; Hurst v. Kravis, 1958 OK 290, ¶13, 333 P.2d 314. The intent is to be gathered from the terms of the instrument as a whole. In re Will of Dimick, 1975 OK 10, ¶10; Dunnet v. First Nat. Bank & Trust Co., 1938 OK 608, ¶6, 85 P.2d 281. Where there is no ambiguity and the language of a trust is clear and plainly susceptible of only one construction, the plain provisions of the trust instrument must determine its construction. House of Realty, Inc. v. City of Midwest City, 2004 OK 97, ¶36, 109 P.3d 314; Matter of Home-Stake Production Co., Etc., 1979 OK 81, ¶8, 598 P.2d 1193.

¶19 The standard for construing the terms of an instrument creating a trust is similar to the standard governing interpretation of the Oklahoma statutes. In construing a statute, the primary goal is to determine legislative intent. In re Estate of Jackson, 2008 OK 83, ¶16, 194 P.3d 1269; Heldermon v. Wright, 2006 OK 86, ¶12, 152 P.3d 855; George E. Failing Co. v. Watkins, 2000 OK 76, ¶7, 14 P.3d 52. If the legislative intent is clear from a statute's plain and unambiguous language, this Court need not resort to rules of statutory construction. In re Estate of Jackson, 2008 OK 83, ¶16; Heldermon, 2006 OK 86, ¶12. Legislative intent is to be gleaned from the text in light of its general purpose and object. Watkins, 2000 OK 76, ¶7; City of Tulsa v. State ex rel. Public Employees Relations Bd., 1998 OK 92, ¶14, 967 P.2d 1214.

¶20 Regardless of whether the UUPA creates a trust, the language of the UUPA is clear and unambiguous, and its terms control. Similarly, the duties of the State Treasurer, either as a trustee or executive official, are defined by the UUPA. Title 60 O.S. 2011 § 670 requires the State Treasurer to determine a necessary reserve amount of unclaimed property and to transfer the excess into the General Revenue Fund.[6] Likewise, 60 O.S. 2011 § 671 requires the State Treasurer to cease those payments if the number of valid claims exceeds the reserve, and 60 O.S. 2011 § 672 requires the State Treasurer to care for the reserve fund and permits its investment, while requiring any interest to be paid into the General Revenue Fund. Title 60 O.S. 2011 § 668, which creates the Unclaimed Property Fund in the first place, does not require the Unclaimed Property Fund retain all money deposited into it. Title 60 O.S. 2011 § 668, in pertinent part, describes the Unclaimed Property Fund thusly:

There is hereby created in the State Treasury the "Unclaimed Property Fund", the principal of which shall constitute a trust fund for persons claiming any interest in any property delivered to the state under the Uniform Unclaimed Property Act and may be invested as hereinafter provided and shall not be expended except as provided in the Uniform Unclaimed Property Act. (emphasis added).

¶21 Appellant has not alleged the State Treasurer has taken any action contrary to the provisions of the UUPA. To the contrary, Appellant alleges that the Treasurer has violated his obligations as a "trustee" by following the provisions of the UUPA, which would itself be the trust instrument if this Court were to hold it created an express trust. If it does not, the State Treasurer has simply done exactly as the legislature has directed in implementing the UUPA and fulfilling his obligations. There is no merit to Appellant's trust allegations.

B. Appellant's allegations the UUPA constitutes a "Ponzi scheme" are without merit.

¶22 Appellant also alleges the UUPA creates a "Ponzi scheme" because of how it handles the reserve to pay established claims. The UUPA provides for the maintenance of a reserve fund that might conceivably be insufficient to pay out all established claims. See 60 O.S. 2011 § 670. If this eventuality occurs, 60 O.S. 2011 § 671 requires the State Treasurer to recalculate the necessary reserve and cease making payments into the General Revenue Fund until all validly established claims are paid. In other words, if validly established claims exceed the established reserve, incoming unclaimed property will be held in reserve to pay valid claims until all established claims are paid. Appellant asserts this constitutes a "Ponzi scheme", because the reserve is not sufficient to pay all potential (including not-yet-established) claims and new abandoned property is to be used to pay any established claims exceeding the reserve.

¶23 A "Ponzi scheme" is a fraudulent investment scheme. Black's Law Dictionary defines "Ponzi scheme" in the following manner:

[a] fraudulent investment scheme in which money contributed by later investors generates artificially high dividends or returns for the original investors, whose example attracts even larger investments. Money from the new investors is used directly to repay or pay interest to earlier investors, usu. without any operation or revenue-producing activity other than the continual raising of new funds. This scheme takes its name from Charles Ponzi, who in the late 1920s was convicted for fraudulent schemes he conducted in Boston.

Black's Law Dictionary (10th ed. 2014).

The example from which the name is derived, masterminded by Charles Ponzi, was described by the Supreme Court of the United States in Cunningham v. Brown, 265 U.S. 1, 44 S.Ct. 424, 68 L.Ed. 873 (1924).[7] This Court has considered the legal ramifications of "Ponzi schemes" in several cases, all of which concerned fraudulent investment schemes. See, e.g., Horton v. Hamilton, 2015 OK 6, 345 P.3d 357 (concerning purchase of a bond that was part of a fraudulent investment Ponzi scheme); Okla. Dep't of Sec. ex rel. Faught v. Wilcox, 2011 OK 82, 267 P.3d 106 (Department of Securities sought return of amounts defendants received from Ponzi scheme in excess of their investments); Okla. Dep't of Sec. ex rel. Faught v. Blair, 2010 OK 16, 231 P.3d 645 (same underlying issues as Wilcox).

¶24 The UUPA is not a "Ponzi scheme" within the meaning of that term. It is not a fraudulent investment scheme being perpetrated against the citizens of Oklahoma, implicating violations of the Oklahoma Uniform Securities Act, 71 O.S. §§ 1-101 to 1-701, or otherwise. The UUPA deals with unclaimed property that is presumed abandoned. It establishes a reserve to pay valid claims in the event owners of that property eventually come forward to claim it, and permits the State to put the rest to use. The State is not deceiving new investors in order to pay valid claims, but rather paying those claims with abandoned property it would be taking in anyway, per the terms of the UUPA. Title 60 O.S. 2011 § 671 operates in such a manner that even if they must wait, owners of abandoned property with valid claims will always be able to eventually recover their previously presumed-abandoned property.

¶25 Should Appellant's allegations be read as constituting a more general claim of fraud, they still fail to state a claim upon which relief may be granted. Fraud is a generic term embracing the multifarious means which human ingenuity can devise so one can get advantage over another by false suggestion or suppression of the truth. Croslin v. Enerlex, Inc., 2013 OK 34, ¶11, 308 P.3d 1041; Singleton v. LePak, 1967 OK 37, ¶13, 425 P.2d 974; Morris v. McLendon, 1933 OK 619, ¶8, 27 P.2d 811. Title 12 O.S. Supp. 2013 § 2009(B) sets out the pleading standard for fraud and provides: "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Under this standard, allegations of fraud must be stated with sufficient particularity to enable the opposing party to prepare his or her responsive pleadings and defenses. A-Plus Janitorial & Carpet Cleaning v. Employers' Workers' Comp. Ass'n, 1997 OK 37, ¶35, 936 P.2d 916. This standard requires specification of the time, place, and content of an alleged false representation. Gianfillippo v. Northland Gas Co., 1993 OK 125, ¶11, 861 P.2d 308. Appellant has not alleged any misrepresentation made concerning the operation of the UUPA in connection with his claim that it constitutes a "Ponzi scheme". The UUPA's requirements are set out in the Oklahoma Statutes for all to see, and were followed by the State Treasurer. Appellant's allegations that the UUPA constitutes a "Ponzi scheme" are without merit.

III.

APPELLANT'S CONSTITUTIONAL CLAIMS

¶26 The Court now turns to the various questions concerning the constitutionality of the UUPA that Appellant has preserved for appeal. A challenger to the constitutionality of a statute bears a heavy burden. A legislative act is presumed to be constitutional and will be upheld unless it is clearly, palpably and plainly inconsistent with the Constitution. Rural Water Sewer and Solid Waste Mgmt. v. City of Guthrie, 2010 OK 51, ¶15, 253 P.3d 38; EOG Resources Marketing, Inc. v. Okla. State Bd. of Equalization, 2008 OK 95, ¶13, 196 P.3d 511; Mehdipour v. State ex rel. Dep't of Corr., 2004 OK 19, ¶22, 90 P.3d 546. Every presumption is to be indulged in favor of the constitutionality of a statute. Thomas v. Henry, 2011 OK 53, ¶8, 260 P.3d 1251; Fent v. Okla. Capitol Improvement Auth., 1999 OK 64, ¶3, 984 P.2d 200.

A. Transfers from the Unclaimed Property Fund to the State's General Revenue Fund do not create a debt in violation of Okla. Const. art. 10, § 23.

¶27 Appellant asserts that the reserve provisions of the UUPA, 60 O.S. 2011 §§ 670-671 create a "debt" in violation of Okla. Const. art. 10, § 23. In pertinent part, Okla. Const. art. 10, § 23 provides:

[t]he state shall never create or authorize the creation of any debt or obligation, or fund or pay any deficit, against the state, or any department, institution or agency thereof, regardless of its form or the source of money from which it is to be paid, except as may be provided in this section and in Sections 24 and 25 of Article X of the Constitution of the State of Oklahoma.

¶28 Over the years this Court has analyzed what constitutes a "debt" in violation of Okla. Const. art. 10, § 23. For example, in In re Application of Okla. Dep't of Transp., 2003 OK 105, ¶25, 82 P.3d 1000, this Court held that notes issued by the Oklahoma Department of Transportation that were to be payable only from future federal highway aid did not constitute a debt of the State of Oklahoma pursuant to Okla. Const. art. 10, § 23. This Court stated:

[t]he proposed GARVEE notes when issued by the Oklahoma Department of Transportation will constitute an obligation payable solely from future receipts of federal highway aid dedicated to the retirement of the notes. The principal, interest, or costs of the GARVEE notes will not be paid with future revenues raised by the taxing power of this State, nor will they be paid from future funds that would otherwise be available for general governmental purposes. In the event of default, note holders will be paid only from the Note Payment Fund and any receipts of federal highway aid dedicated to the retirement of the notes. Under these circumstances, the proposed GARVEE notes will not constitute a debt of the State of Oklahoma under the Okla. Const. art. 10, § 23.

In re Application of Okla. Dept. of Transp., 2003 OK 105, ¶25 (emphasis added).

¶29 This Court has also held that no debt is created when a statute authorizes bonds but does not attempt to bind future legislators to repay them. In Fent v. Okla. Capitol Imp. Auth., 1999 OK 64, ¶7, this Court examined statutes authorizing the Oklahoma Capital Improvement Authority (OCIA) to issue and sell bonds for certain public building projects. This Court stated:

[a]s we interpret both statutes, OCIA is authorized thereunder to fund the costs of the various projects by borrowing monies on the credit of the income and revenues to be derived from the projects. The money borrowed will, of course, come from the issuance and sale of the bonds. In turn, the bonds are to be retired by payments made to OCIA by the various agencies, departments and/or instrumentalities using and/or benefitting from the projects under lease or other agreements with OCIA. Although each statute expresses an intent to appropriate sufficient monies to the various agencies, etc. to make such payments to OCIA for the purpose of retiring the bonds, nowhere in either statute is there a provision obligating a future legislature to do so.

Fent v. Okla. Capitol Imp. Auth., 1999 OK 64, ¶8.

¶30 Appellant argues that the promise to return property to established claimants, set out in 60 O.S. 2011 §§670-671 violates Okla. Const. art. 10, § 23 by creating a "debt" within the meaning of that provision, without complying with the exceptions set out in Okla Const. art. 10, §§ 23-25. Title 60 O.S. 2011 § 670 requires the State Treasurer to determine what amount of unclaimed property in custody should be retained as a reserve to pay established claims. The State Treasurer is then required to pay all amounts in custody in excess of that reserve into the State Treasury to the credit of the General Revenue Fund. However, especially important is the final sentence of 60 O.S. 2011 § 670, which provides:

[w]hen monies are deposited to the credit of the General Revenue Fund, all rights of any owner of unclaimed property to resort against the money so paid into the General Revenue Fund shall terminate, but the right of any person legally establishing a claim to any property right which has been taken into the custody of the State Treasurer shall be preserved and the value thereof shall be paid from such reserve.

Pursuant to this section, claimants of unclaimed property have no rights whatsoever to seek payment from the General Revenue Fund, only from the reserve, itself composed of unclaimed property.

¶31 Title 60 O.S. 2011 § 671 provides for the eventuality of a shortage of funds in the reserve to pay valid claims, and provides:

[i]f, at any time, the reserve as provided for in the Uniform Unclaimed Property Act is insufficient to pay in full established claims, the State Treasurer immediately shall:

1. Redetermine, on the basis of past experience, the percentage necessary to be maintained in the reserve; and

2. Cease to make any payments to the General Revenue Fund until:

a. all validly established claims as provided for in the Uniform Unclaimed Property Act have been paid, and

b. there is accumulated in the reserve the sum required to be kept therein under the redetermination, whereupon the State Treasurer shall resume payments to the General Revenue Fund in accordance with the terms of the Uniform Unclaimed Property Act.

Pursuant to this section, if there is a deficiency in the reserve to pay in full established claims, all payments to the General Revenue Fund must cease until those claims are paid and the reserve is built back up.

¶32 The transfer of unclaimed property to the General Revenue Fund pursuant to the UUPA is one way. While excess funds above the determined reserve are transferred to the General Revenue Fund, recourse is never made to the General Revenue Fund to satisfy potential claims. Claimants' only recourse is to the reserve, itself filled only by the accumulation of abandoned property pursuant to the UUPA. The State has not legally pledged its full faith and credit to pay the owners of abandoned property. The Legislature, in enacting the UUPA, did not make any attempt to bind future legislatures to appropriate money or otherwise raise funds to pay established claims under the UUPA. Appellant's claim that the UUPA creates a debt in violation of Okla. Const. art. 10, § 23 is without merit.

B. The UUPA does not effectuate a taking in violation of U.S. Const. amend. V.

¶33 Appellant asserts that the UUPA effectuates a taking of private property without just compensation in violation of U.S. Const. amend. V.[8] In Texaco, Inc. v. Short, 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982), the Supreme Court of the United States conclusively rejected the notion that legal termination of ownership rights in abandoned property constitutes a taking entitled to just compensation. In that case, the Court considered an Indiana statute under which a mineral lease not used for twenty years would automatically lapse unless the owner filed a statement of claim in the county recorder's office. Texaco, Inc., 454 U.S. at 518-520. Concerning the appellants' taking claim, the Court held:

[i]n ruling that private property may be deemed to be abandoned and to lapse upon the failure of its owner to take reasonable actions imposed by law, this Court has never required the State to compensate the owner for the consequences of his own neglect. We have concluded that the State may treat a mineral interest that has not been used for 20 years and for which no statement of claim has been filed as abandoned; it follows that, after abandonment, the former owner retains no interest for which he may claim compensation. It is the owner's failure to make any use of the property-and not the action of the State-that causes the lapse of the property right; there is no "taking" that requires compensation. The requirement that an owner of a property interest that has not been used for 20 years must come forward and file a current statement of claim is not itself a "taking."

Texaco, Inc., 454 U.S. at 530.

¶34 The Texaco, Inc. Court examined a statute that would completely extinguish rights to property if certain conditions were not met, and determined it did not effectuate a taking. Unlike the Indiana statute examined in Texaco, Inc., the UUPA does not extinguish the rights of owners of abandoned property. As previously discussed, the UUPA is a custodial taking statute. Title 60 O.S. 2011 § 674 provides a procedure through which owners of abandoned property may file a claim and "[i]f a claim is allowed, the State Treasurer shall pay over or deliver to the claimant the property or the amount the State Treasurer actually received or the net proceeds if it has been sold by the State Treasurer." Appellant availed himself of this mechanism and by his own admission had his property returned to him.

¶35 Regardless, much like the statute considered in Texaco, Inc., the UUPA provides that various types of property will be presumed abandoned unless certain actions are taken by the owner in a specified period of time. See 60 O.S. 2011 § 651.1-658.1A. Here, as in Texaco, Inc., the intake and custody of abandoned property is attributable to the inattention or abandonment of the owners. The rationale of Texaco, Inc. is thus applicable. No taking occurs.

¶36 The rationale of Texaco, Inc., applies equally to Appellant's claims concerning interest on his property. The UUPA entitles an owner of abandoned property other than money to receive interest accruing prior to conversion of that property into money. Title 60 O.S. 2011 § 665. Excepting Section 665, the UUPA entitles a claimant only to the amount of their property the Treasurer actually received or the net proceeds if it was sold. Title 60 O.S. 2011 § 674. The State is not required to compensate a claimant for the consequences of their own neglect, and this includes interest their property might generate while temporarily in the custody of the State. Just because the Legislature chose not to terminate an owner's rights in abandoned property does not mean it is required to allow a claim for interest. Courts in other states have reached a similar result applying Texaco, Inc. to their own unclaimed property statutes, including claims for interest. See Smolow v. Hafer, 959 A.2d 298, 303-304 (Pa. 2008); Morris v. Chiang, 77 Cal.Rptr.3d 799, 804 (Cal. ApP.2d Dist. 2008); Smyth v. Carter, 845 N.E.2d 219, 223-224 (Ind. Ct. App. 2006); Clark v. Strayhorn, 184 S.W.3d 906, 914 (Tex. App. 2006). Appellant's claim that the UUPA effectuates a taking in violation of U.S. Const. amend. V is meritless.

C. The UUPA does not violate the Due Process Provisions of either the United States or Oklahoma Constitutions.

¶37 Appellant asserts that the UUPA deprives him and others of property without due process of law in violation of Okla. Const. art. 2, § 7,[9] U.S. Const. amend. V,[10] and U.S. Const. amend. XIV, § 1,[11] by taking trust property, through the statutory provisions requiring transfer of abandoned property exceeding the reserve into the General Revenue Fund. Oklahoma's Due Process Clause is generally coextensive with its federal counterpart. State ex rel. Bd. of Regents of University of Okla. v. Lucas, 2013 OK 14, n. 25, 297 P.3d 378; Gladstone v. Bartlesville Indep. School Dist. No. 30 (I-30), 2003 OK 30, n. 16, 66 P.3d 442; Fair School Fin. Council of Okla., Inc. v. State, 1987 OK 114, n. 48, 746 P.2d 1135. At a minimum, due process requires notice and an opportunity to be heard. Crownover v. Keel, 2015 OK 35, ¶14, 357 P.3d 470; Edwards v. City of Sallisaw, 2014 OK 86, ¶19, 339 P.3d 870; Daffin v. State ex rel Okla. Dep't of Mines, 2011 OK 22, ¶16, 251 P.3d 741.

¶38 As this Court has not addressed in detail the question of whether the UUPA complies with constitutional due process requirements, federal jurisprudence is illustrative. The Supreme Court of the United States has previously held unclaimed property statutes to be a valid exercise of state power, stating: "[a]s a broad principle of jurisprudence rather than as a result of the evolution of legal rules, it is clear that a state, subject to constitutional limitations, may use its legislative power to dispose of property within its reach, belonging to unknown persons." Standard Oil Co. v. State of N.J., by Parsons, 341 U.S. 428, 435-436, 71 S.Ct. 822, 95 L.Ed. 1078 (1951). Similarly, the Court held in Texaco, Inc., discussed supra.:

[w]e have no doubt that, just as a State may create a property interest that is entitled to constitutional protection, the State has the power to condition the permanent retention of that property right on the performance of reasonable conditions that indicate a present intention to retain the interest.

From an early time, this Court has recognized that States have the power to permit unused or abandoned interests in property to revert to another after the passage of time.

Texaco, Inc., 454 U.S. at 526.

¶39 In Texaco, Inc., the Supreme Court of the United States also considered whether Indiana's mineral lapse statute met the adequate notice requirement of due process. Concerning notice of the requirements of the statute itself, the Court held:

[g]enerally, a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply .. It is well established that persons owning property within a State are charged with knowledge of relevant statutory provisions affecting the control or disposition of such property.

Texaco, Inc., 454 U.S. at 532.

Having determined that the appellants were presumed to have notice of the mineral lapse statute's provisions, the Court next considered the question of whether, given that knowledge, they had a constitutional right to be advised that the period of non-use was about to expire and their interest would revert to the surface owner. Texaco, Inc., 454 U.S. at 533. The Court then made an important distinction, noting: "it is essential to recognize the difference between the self-executing feature of the statute and a subsequent judicial determination that a particular lapse did in fact occur." Texaco, Inc., 454 U.S. at 533.

¶40 The appellants in Texaco, Inc., argued the Supreme Court's own seminal case of Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950)[12] should be applied to determine whether they received proper notice that their mineral interests were about to revert to the surface owners. The Supreme Court disagreed, holding:

[t]he reasoning in Mullane is applicable to a judicial proceeding brought to determine whether a lapse of a mineral estate did or did not occur, but not to the self-executing feature of the Mineral Lapse Act. The due process standards of Mullane apply to an "adjudication" that is "to be accorded finality." The Court in Mullane itself distinguished the situation in which a State enacted a general rule of law governing the abandonment of property. It has long been established that "laws [must] give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly," Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 333, but it has never been suggested that each citizen must in some way be given specific notice of the impact of a new statute on his property before that law may affect his property rights.

Texaco, Inc., 454 U.S. at 535-536.

¶41 Much like the mineral lapse statute at issue in Texaco, Inc., the UUPA sets conditions under which types of property are presumed abandoned, based primarily on the failure of the owner to take certain actions such as communicating with the holder. See, e.g., 60 O.S. 2011 § 651.2 (any sum payable on a check, certified check, cashier's check, draft, or similar instrument presumed abandoned after no written communication or indication of interest from the owner after five years). Title 60 O.S. 2011 § 663 then requires holders to turn this property over to the State Treasurer. Unlike in Texaco, Inc., this process does not result in the termination of the owner's interest in the property. Even if it did, however, the holding in Texaco, Inc., illustrates that due process requirements of notice and an opportunity to be heard do not apply to automatic termination of a property right through operation of statute based on an owner's failure to fulfill certain conditions. Rather, the requirements of due process would apply only to a proceeding brought to adjudicate if that right did in fact terminate. Texaco, Inc., 454 U.S. at 535. It follows by extension that due process is not offended by the automatic transfer of abandoned property into the custody of the State Treasurer.

¶42 Since the UUPA does not terminate an individual owner's right to recover their abandoned property, even after the statute results in its transfer to the State, the statute provides a procedural mechanism for owners to seek return of their abandoned property. The procedural elements of this statute comply with due process requirements. They are consistent with the holdings of the Supreme Court of the United States in Texaco, Inc. and Mullane, as well as with this Court's jurisprudence concerning due process.

¶43 The UUPA provides ample notice to potential claimants of abandoned property. Title 60 O.S. Supp. 2013 § 661 requires holders of abandoned property to file a report with the State Treasurer concerning the property. The report must provide the name, if known, and last-known address for the owner of any property valued over $50 and presumed abandoned. Title 60 O.S. Supp. 2013 § 661(E) requires holders of abandoned property to attempt to notify owners prior to filing the report. It provides in full:

E. Not more than one hundred twenty (120) days before filing the report required by this section, the holder in possession of property presumed abandoned and subject to custody as unclaimed property under the Uniform Unclaimed Property Act shall send written notice to the apparent owner at the owner's last-known address informing the owner that the holder is in possession of property subject to the Uniform Unclaimed Property Act if:

1. The holder has in the records of the holder an address for the apparent owner which the holder's records do not disclose to be inaccurate;

2. The claim of the apparent owner is not barred by the statute of limitations; and

3. The property has a value of Fifty Dollars ($50.00) or more, or the property has a value of less than Fifty Dollars ($50.00) and is one of a recurring number of continuous payments, including, but not limited to, royalties, annuities, dividends, distributions and other recurring sums presumed abandoned pursuant to subsection D of Section 655 of this title. The holder is not required to send written notice to the owner if the holder has previously attempted to communicate with the owner, or otherwise exercised due diligence to ascertain the whereabouts of the owner. The mailing of notice by first-class mail to the last-known address of the owner by the holder shall constitute compliance with this subsection and, if done, no further act on the part of the holder shall be necessary.

Title 60 O.S. 2011 § 661(E).

¶44 Further, 60 O.S. 2011 § 662 requires the State Treasurer attempt to notify owners that their property is in State custody. It provides:

A. The State Treasurer shall cause at least two notices to be published during the year following the report required by Section 661 of this title in a legal newspaper of general circulation in the county in this state in which is located the last-known address of any person to be named in the notice. Different legal newspapers of general circulation may be used for each notice. If no address is listed or if the address is outside this state, the notice must be published in the county within this state which is the principal place of business of the holder of the abandoned property, or in an Oklahoma newspaper which the State Treasurer believes most likely to be seen by the owner of the property or by heirs of the owner.

B. The published notice must be entitled "Notice of Names of Persons Appearing to be Owners of Abandoned Property", and contain:

1. The names in alphabetical order and last-known address, if any, of persons listed in the report and entitled to notice within the county as specified in subsection A of this section;

2. A statement that information concerning the property and the name and last-known address of the holder may be obtained by any person possessing an interest in the property by addressing an inquiry to the State Treasurer; and

3. A statement that the property is in the custody of the State Treasurer and all claims must be directed to the State Treasurer.

C. The State Treasurer is not required to publish in the notice any items of less than Fifty Dollars ($50.00) unless the State Treasurer considers their publication to be in the public interest.

D. The State Treasurer shall provide electronic access to the new names and last-known addresses of all persons reported to the State Treasurer as owners of unclaimed property on an Internet web site. The State Treasurer shall take reasonable steps to publicize the existence of this web site and shall publish an advertisement no less than once each calendar quarter in a legal newspaper of general circulation in each county of this state.

¶45 Owners of abandoned property are then permitted by 60 O.S. 2011 § 674 to file a claim for the return of their property, which the State Treasurer must consider within ninety days and give written notice if the claim is denied in whole or part. Title 60 O.S. 2011 § 675 provides further procedure for determining claims, and provides in pertinent part:

A. The State Treasurer shall consider any claim filed under the Uniform Unclaimed Property Act and may hold a hearing and receive evidence concerning it. The procedure to be followed hereunder shall be as prescribed by the Administrative Procedures Act. If a hearing is held, the State Treasurer shall prepare a finding and decision in writing on each claim filed, stating the substance of any evidence heard by the State Treasurer and the reasons for the State Treasurer's decision. The decision shall be a public record. (Footnotes omitted).

¶46 This Court recently considered what constitutes adequate notice for due process purposes in Crownover v. Keel, 2015 OK 35, 357 P.3d 470. In that cause, this Court considered whether an owner of real property received constitutionally sufficient notice of the sale of his property for delinquent taxes, when notice was provided only by publication and certified mail that was returned undelivered. Applying Jones v. Flowers, 547 U.S. 220, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006), and Mullane, 339 U.S. 306, this Court held that notice must be reasonably calculated to reach the interested parties, and this standard was not satisfied by certified mail when the letter was returned unclaimed. See Crownover, 2015 OK 35, ¶¶27-30.

¶47 Here, the UUPA requires notice to property owners via multiple mechanisms that are reasonably calculated, under the circumstances, to apprise interested parties that their abandoned property is (or is soon to be) in the custody of the State and that they may file a claim to have it returned to them. See Crownover, 2015 OK 35, ¶¶27-30; Jones, 547 U.S. at 226; Mullane, 339 U.S. at 314-315. The very nature of the UUPA as a custodial taking statute for property that is presumed abandoned means that communicating notice to potential owners may be difficult. Accordingly, the statute requires mailed notice, publication, and posting on the internet. As applied to Appellant, the undisputed facts of this cause indicate that he became aware the State had taken custody of his abandoned property, filed a claim, the claim was approved, and his property was returned to him. Appellant's allegations that the UUPA does not provide constitutionally-sufficient notice are without merit.

D. The UUPA does not violate constitutional guarantees to equal protection under the law. 

¶48 Appellant also alleges that he has been denied equal protection under the law, as part of his due process argument. U.S. Const. amend. XIV, § 1 provides in pertinent part that no state shall: "deny to any person within its jurisdiction the equal protection of the laws."[13] Appellant makes no allegations, in his original Petition or in his Petition in Error, concerning any classes who receive constitutionally problematic treatment. Rather, Appellant appears to equate equal protection with due process and argues that the alleged deprivation of notice discussed supra also constitutes a violation of the Equal Protection Clause.

¶49 The Equal Protection Clause, although not an absolute guarantee of equality of operation or application of state legislation, is intended to safeguard the quality of governmental treatment against arbitrary discrimination. Ross v. Peters, 1993 OK 8, ¶17, 846 P.2d 1107. When called upon to analyze a case on equal protection grounds, a court will apply one of three standards of review: 1) rational basis; 2) heightened scrutiny; or 3) strict scrutiny. Gladstone, 2003 OK 30, n. 22; City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 440-442, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Unless a classification warrants some form of heightened review because it jeopardizes the exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest. Gladstone, 2003 OK 30, n. 25; Nordlinger v. Hahn, 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992); Cleburne, 473 U.S. at 439-441.

¶50 Though Appellant makes no argument concerning a classification, any equal protection violations of the UUPA would have to hinge on its creation of a classification of owners of presumably abandoned property that are treated differently from owners of other property. Heightened levels of scrutiny apply only to statutes that: 1) operate to the peculiar disadvantage of a suspect class such as a class based on alienage or ancestry; or 2) interfere with the exercise of a fundamental right grounded in the constitution such as the right to vote, right to interstate travel, and rights guaranteed by the first amendment. Jacobs Ranch, L.L.C. v. Smith, 2006 OK 34, ¶55, 148 P.3d 842; Mass. Bd. Of Retirement v. Murgia, 427 U.S. 307, 312, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). As the UUPA implicates neither of those conditions through its treatment of abandoned property and owners, this Court must only determine if the classification rationally furthers a legitimate state interest. Gladstone, 2003 OK 30, n. 25.

¶51 There is no doubt that the UUPA, and its treatment of unclaimed property, serves a legitimate state interest. It prevents holders of unclaimed property (such as banks, insurers, and other entities) from reaping financial windfalls from that property. Instead, the UUPA requires it be turned over to the State and allows it to be put to public use. Through its notification provisions, it requires efforts be made to contact the owners of abandoned property in an effort to reunite owners with their property. The Supreme Court of the United States has unequivocally stated that States have legitimate interests in terminating property rights in property that has not been used for years. Texaco, Inc., 454 U.S. at 526-530. The UUPA does not go that far, and permits owners to reclaim their property even as continuously-unclaimed property is put to public use. The UUPA's treatment of abandoned property and its owners rationally furthers a legitimate state interest, and does not operate in an arbitrary manner. Accordingly, the UUPA does not violate the equal protection components of either U.S. Const. amend. XIV, § 1 or Okla. Const. art. 2, § 7.

CONCLUSION

¶52 Appellant challenges the validity of the UUPA on multiple grounds, constitutional and otherwise. In our view, the Petition and the allegations contained therein, read in conformity with the arguments raised by Appellant in this appeal, indicate no relief is possible under any set of facts which can be established and is consistent with the allegations. Appellant's claims are without merit. Accordingly, the trial court's dismissal of Appellant's Petition, and its denial of his Motion for Summary Judgment, were proper.

ORDER OF THE TRIAL COURT IS AFFIRMED

ALL JUSTICES CONCUR

FOOTNOTES

[1] Under the pre-1997 appellate rules, errors not presented by the petition in error would not be considered on appeal. See Okla. Tax Comm'n v. City Vending of Muskoge, Inc., 1992 OK 110, n. 6, 835 P.2d 97; Kirschstein v. Haynes, 1990 OK 8, ¶31, 788 P.2d 941. This changed with the adoption of the modern Rule 1.26(b) in 1997,which provides that the petition in error will be deemed amended to include errors set forth in the brief-in-chief. Rule 1.26, Oklahoma Supreme Court Rules, 12 O.S. Supp. 2013, Ch. 15, App. 1. However, in accelerated appeals under Oklahoma Supreme Court Rule 1.36 and with the absence of appellate briefs, issues not raised by Appellant in his Petition in Error will not be considered by this Court on appeal.

[2] In our December 22, 2015, order granting Appellant's Motion to Retain, this Court made this cause a companion to Reynolds v. Fallin, No. 114,481.

[3] The distinction between lack of any cognizable legal theory and insufficient facts under a cognizable legal theory is important, because in order for the courts to dismiss a claim for failure to state a cause of action without giving the plaintiff the opportunity to amend, it must appear that the claim does not exist rather than the claim has been defectively stated. Fanning v. Brown, 2004 OK 7, ¶23, 85 P.3d 841.

[4] Escheat is a procedure with ancient origins whereby a sovereign may acquire title to abandoned property if after a number of years no rightful owner appears. State of Tex. v. State of N.J., 379 U.S. 674, 676, 85 S.Ct. 626, 13 L.Ed.2d 596 (1965), supplemented 380 U.S. 518 (1965). Though this Court has previously used the term "escheat" to refer to the transfer of abandoned property to the State pursuant to the UUPA, in TXO Production Corp. v. Okla. Corp. Comm'n, 1992 OK 39, ¶15, 829 P.2d 964, this Court explained that the UUPA is not a true escheat statute, but rather a custodial taking law. See Croslin v. Enerlex, Inc., 2013 OK 34, ¶25, 308 P.3d 1041. Under the UUPA, the State does not acquire title to abandoned property but rather holds it in trust for the rightful owner. Croslin, 2013 OK 34, ¶25; TXO Production Corp., 1992 OK 39, ¶15. The Oklahoma Attorney General has also noted the custodial taking nature of the UUPA, stating:

Oklahoma enacted its unclaimed property legislation in 1967 and modeled it after the 1954 version of the Uniform Disposition of Unclaimed Property Act promulgated by the National Conference of Commissioners on State Laws. The Oklahoma Act contains the basic structure and most of the basic wording of the Uniform Act. One of the distinguishing characteristics of the Uniform Act is that it is custodial in nature, that is, it does not result in the loss of the owner's property rights. See, Uniform Disposition of Unclaimed Property Act. pref. n. 9A U.L.A.412 413 (1965). In custodial statutes, the state is only given possession and use of the property as long as it remains unclaimed. Also in custodial statutes, the state is required to keep its books open so that the true owner may make a claim to the held property at any time. Further, in custodial statutes, there is never a transfer of property from the treasurer's custodial rolls to the escheat rolls. See, 3 Harv. J. Legis., supra.,144.

Question Submitted by: The Honorable Nancy Virtue, Oklahoma House of Representatives, The Honorable Herbert Rozell, Oklahoma State Senate, 1984 OK AG 141, ¶9.

[5] Appellant alternates between using the terms trust and public trust when referring to the relevant sections of the UUPA. Public trusts are created and operate pursuant to the Public Trust Act, 60 O.S. §§ 176 -180.4. Title 60 O.S. 2011 § 176 requires the State or one of its political subdivisions be the beneficiary of a public trust. Appellant's arguments rest on the assertion that he, and other owners of abandoned property similarly situated, are the beneficiaries of any trust created pursuant to the UUPA. The Public Trust Act is inapplicable to Appellant's allegations.

[6] Title 60 O.S. 2011 § 670 provides in pertinent part:

[t]he State Treasurer shall determine, from time to time, what amount of unclaimed property in custody should be retained as a reserve..

The State Treasurer, after having found and determined the reserve necessary as stated in this section, shall pay all amounts in custody in excess of the necessary reserve into the State Treasury to the credit of the General Revenue Fund. (Emphasis added).

Generally, when the Legislature uses the term "shall", it signifies a mandatory directive or command. Tulsa County Budget Bd. v. Tulsa County Excise Bd., 2003 OK 103, n. 25, 81 P.3d 662; Keating v. Edmondson, 2001 OK 110, ¶13, 37 P.3d 882; U.S. Through Farmers Home Admin. v. Hobbs, 1996 OK 77, n. 16, 921 P.2d 338. The use of shall in this instance is unambiguously a mandatory directive.

[7] The Court described the scheme thusly:

[t]he litigation grows out of the remarkable criminal financial career of Charles Ponzi. In December, 1919, with a capital of $150, he began the business of borrowing money on his promissory notes. He did not profess to receive money for investment for account of the lender. He borrowed the money on his credit only. He spread the false tale that on his own account he was engaged in buying international postal coupons in foreign countries and selling them in other countries at 100 per cent. profit, and that this was made possible by the excessive differences in the rates of exchange following the war. He was willing, he said, to give others the opportunity to share with him this profit. By a written promise in 90 days to pay them $150 for every $100 loaned, he induced thousands to lend him. He stimulated their avidity by paying his 90-day notes in full at the end of 45 days, and by circulating the notice that he would pay any unmatured note presented in less than 45 days at 100 per cent. of the loan. Within eight months he took in $9,582,000, for which he issued his notes for $14,374,000. He paid his agents a commission of 10 per cent. With the 50 per cent. promised to lenders, every loan paid in full with the profit would cost him 60 per cent. He was always insolvent, and became daily more so, the more his business succeeded. He made no investments of any kind, so that all the money he had at any time was solely the result of loans by his dupes.

Cunningham, 265 U.S. at 7-8.

[8] U.S. Const. amend. V provides in pertinent part:

. nor shall private property be taken for public use, without just compensation.

The Fifth Amendment to the U.S. Constitution is made applicable to the States by the Fourteenth Amendment. Board of County Comm'rs of Muskogee County v. Lowery, 2006 OK 31, n. 9, 136 P.3d 639.

Appellant did not raise, in his petition or on appeal, the question of whether the UUPA violates Oklahoma's constitutional provisions concerning takings of private property, found in Okla. Const. art. 2, §§ 23 & 24. In Lowery, this Court determined that Oklahoma's eminent domain provisions provide private property protection to Oklahoma citizens beyond that which is afforded them by the Fifth Amendment to the U.S. Constitution, specifically in the context of taking property for private, as well as public, use. 2006 OK 31, ¶19, 136 P.3d 639.

[9] Okla. Const. art. 5, § 7 provides:

[n]o person shall be deprived of life, liberty, or property, without due process of law.

[10] U.S. Const. amend. V provides in pertinent part:

[n]o person shall . be deprived of life, liberty, or property, without due process of law;

[11] U.S. Const. amend. XIV, § 1 provides in pertinent part:

. nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

[12] Mullane set out the fundamental requirements for notice under the due process clause. The Court held:

[m]any controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case.

Mullane, 339 U.S. at 313. The Court elaborated on the notice requirement specifically, further holding:

[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278, 132 A.L.R. 1357; Grannis v. Ordean, 234 U.S. 385, 34 S.Ct. 779, 58 L.Ed. 1363; Priest v. Board of Trustees of Town of Las Vegas, 232 U.S. 604, 34 S.Ct. 443, 58 L.Ed. 751; Roller v. Holly, 176 U.S. 398, 20 S.Ct. 410, 44 L.Ed. 520. The notice must be of such nature as reasonably to convey the required information, Grannis v. Ordean, supra, and it must afford a reasonable time for those interested to make their appearance, Roller v. Holly, supra, and cf. Goodrich v. Ferris, 214 U.S. 71, 29 S.Ct. 580, 53 L.Ed. 914.

Mullane, 339 U.S. 314-315.

[13] Although the Oklahoma Constitution does not contain an equal protection provision like or similar to U.S. Const. amend. XIV, § 1, this Court has identified a functional equivalent of that clause in the anti-discrimination component of our state constitution's due process section, Okla. Const. art. 2, § 7. Gladstone, 2003 OK 30, n. 15; Fair School Finance Council v. State, 1987 OK 114, ¶54, 746 P.2d 1135. We have also identified an equal protection component in Okla. Const. art. 2, § 6. See Thayer v. Phillips Petroleum Co., 1980 OK 95, ¶¶12-15, 613 P.2d 1041.

 





 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Attorney General's Opinions
 Cite
Name
Level

 1984 OK AG 141, Question Submitted by: The Honorable Nancy Virtue, Oklahoma House of Representatives, The Honorable Herbert Rozell, Oklahoma State Senate
Cited
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1987 OK 114, 746 P.2d 1135, 58 OBJ 3282, Fair School Finance Council of Oklahoma, Inc. v. State
Discussed at Length
 1990 OK 8, 788 P.2d 941, 61 OBJ 241, Kirschstein v. Haynes
Discussed
 1992 OK 22, 827 P.2d 1314, 62 OBJ 3115, Lincoln Bank and Trust Co. v. Oklahoma Tax Com'n
Discussed
 1992 OK 39, 829 P.2d 964, 63 OBJ 942, TXO Production Corp. v. Oklahoma Corp. Com'n
Discussed at Length
 1992 OK 110, 835 P.2d 97, 63 OBJ 2287, Oklahoma Tax Com'n v. City Vending of Muskogee, Inc.
Discussed
 1992 OK 149, 844 P.2d 137, 63 OBJ 3190, Zaharias v. Gammill
Discussed
 1993 OK 8, 846 P.2d 1107, 64 OBJ 440, Ross v. Peters
Discussed
 1993 OK 125, 861 P.2d 308, 64 OBJ 2971, Gianfillippo v. Northland Cas. Co.
Discussed
 1938 OK 608, 85 P.2d 281, 184 Okla. 82, DUNNETT v. FIRST NAT. BANK & TRUST CO.
Discussed
 1997 OK 37, 936 P.2d 916, 68 OBJ 1266, A-Plus Janitorial & Carpet Cleaning v. Employers' Workers' Compensation Assoc.
Discussed
 1996 OK 139, 915 P.2d 359, 67 OBJ 1339, WASHINGTON v. STATE ex rel. DEPT. OF CORRECTIONS
Discussed
 1997 OK 103, 943 P.2d 1074, 68 OBJ 2550, LOCKHART v. LOOSEN
Discussed at Length
 2001 OK 110, 37 P.3d 882, 72 OBJ 3672, KEATING v. EDMONDSON
Discussed
 1958 OK 290, 333 P.2d 314, HURST v. KRAVIS
Discussed
 1933 OK 619, 27 P.2d 811, 167 Okla. 68, MORRIS v. MCLENDON
Discussed
 1967 OK 37, 425 P.2d 974, SINGLETON v. LePAK
Discussed
 1995 OK 108, 905 P.2d 778, 66 OBJ 3281, Hayes v. Eateries, Inc.
Discussed
 2003 OK 30, 66 P.3d 442, GLADSTONE v. BARTLESVILLE INDEPENDENT SCHOOL DISTRICT NO. 30
Discussed at Length
 2003 OK 103, 81 P.3d 662, TULSA COUNTY BUDGET BOARD v. TULSA COUNTY EXCISE BOARD
Discussed
 2003 OK 105, 82 P.3d 1000, IN THE MATTER OF THE APPLIC. OF THE OKLA. DEPT. OF TRANSPORTATION
Discussed at Length
 2004 OK 7, 85 P.3d 841, FANNING v. BROWN
Discussed at Length
 2004 OK 19, 90 P.3d 546, MEHDIPOUR v. STATE ex rel. DEPT. OF CORRECTIONS
Discussed
 2004 OK 97, 109 P.3d 314, HOUSE OF REALTY, INC. v. CITY OF MIDWEST CITY
Discussed
 1996 OK 35, 913 P.2d 302, 67 OBJ 869, Quail Creek Golf v. Okl. Tax Comm.
Discussed
 2006 OK 31, 136 P.3d 639, BOARD OF COUNTY COMMISSIONERS OF MUSKOGEE COUNTY v. LOWERY
Discussed at Length
 2006 OK 34, 148 P.3d 842, JACOBS RANCH, L.L.C. v. SMITH
Discussed
 2006 OK 86, 152 P.3d 855, HELDERMON v. WRIGHT
Discussed at Length
 2006 OK 100, 151 P.3d 132, MAY v. MID-CENTURY INSURANCE COMPANY
Discussed
 1996 OK 77, 921 P.2d 338, 67 OBJ 2242, U.S. Through Farmers Home Admin. v. Hobbs
Discussed
 2008 OK 1, 176 P.3d 1204, DARROW v. INTEGRIS HEALTH, INC.
Discussed at Length
 2008 OK 5, 177 P.3d 565, GENS v. CASADY SCHOOL
Discussed at Length
 2008 OK 83, 194 P.3d 1269, IN THE MATTER OF THE ESTATE OF JACKSON
Discussed at Length
 2008 OK 95, 196 P.3d 511, EOG RESOURCES MARKETING v. OKLAHOMA STATE BD. OF EQUALIZATION
Discussed
 2009 OK 4, 212 P.3d 1158, TUFFY'S, INC. v. CITY OF OKLAHOMA CITY
Discussed
 2010 OK 16, 231 P.3d 645, DEPT. OF SECURITIES ex rel. FAUGHT v. BLAIR
Discussed
 2010 OK 51, 253 P.3d 38, RURAL WATER SEWER AND SOLID WASTE MANAGEMENT v. CITY OF GUTHRIE
Discussed
 2011 OK 22, 251 P.3d 741, DAFFIN v. STATE ex rel. OKLAHOMA DEPT. OF MINES
Discussed
 2011 OK 53, 260 P.3d 1251, THOMAS v. HENRY
Discussed
 2011 OK 82, 267 P.3d 106, DEPT. OF SECURITIES ex rel. FAUGHT v. WILCOX
Discussed
 2012 OK 2, 270 P.3d 155, WILSON v. STATE ex rel. STATE ELECTION BOARD
Discussed at Length
 1975 OK 10, 531 P.2d 1027, IN RE WILL OF DIMICK
Discussed at Length
 2013 OK 14, 297 P.3d 378, STATE ex rel. BOARD OF REGENTS OF THE UNIVERSITY OF OKLAHOMA v. LUCAS
Discussed
 2013 OK 25, 301 P.3d 413, SIMONSON v. SCHAEFER
Discussed at Length
 2013 OK 34, 308 P.3d 1041, CROSLIN v. ENERLEX, INC.
Discussed at Length
 2014 OK 86, 339 P.3d 870, EDWARDS v. CITY OF SALLISAW
Discussed
 2015 OK 6, 345 P.3d 357, HORTON v. HAMILTON
Discussed
 2015 OK 35, 357 P.3d 470, CROWNOVER v. KEEL
Discussed at Length
 2015 OK 53, 353 P.3d 529, LADRA v. NEW DOMINION, LLC
Discussed at Length
 1980 OK 95, 613 P.2d 1041, Thayer v. Phillips Petroleum Co.
Discussed
 1979 OK 81, 598 P.2d 1193, MATTER OF HOME-STAKE PRODUCTION CO., ETC.
Discussed
 2000 OK 76, 14 P.3d 52, 71 OBJ 2662, GEORGE E. FAILING CO. v. WATKINS
Discussed at Length
 1998 OK 92, 967 P.2d 1214, 69 OBJ 3242, City of Tulsa v. State ex rel. Public Employees Relations Board
Discussed
 1999 OK 64, 984 P.2d 200, 70 OBJ 2100, Fent v. Oklahoma Capitol Improvement Authority
Discussed at Length
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2009, Pleading Special Matters
Cited
 12 O.S. 2012, Defenses and Objections - When and How Presented - By Pleading or Motion
Cited
Title 60. Property
 Cite
Name
Level

 60 O.S. 176, Trusts for Benefit of State, County or Municipality - Approval - Expenditures - Bylaws - Amendments - Indebtedness - Bonds - Contracts
Discussed at Length
 60 O.S. 663, Payment or Delivery of Abandoned Property
Discussed
 60 O.S. 668, Unclaimed Property Fund - Deposits
Discussed at Length
 60 O.S. 651.1, Sums Payable on Travelers Check or Money Order Presumed Abandoned
Discussed
 60 O.S. 651.2, Outstanding Sums Presumed Abandoned - Record - Burden of Proof - Affirmative Defenses
Cited
 60 O.S. 661, Report of Abandoned Property
Discussed at Length
 60 O.S. 662, Notice and Publication of Lists of Abandoned Property
Discussed
 60 O.S. 664, Relief From Liability by Payment or Delivery
Cited
 60 O.S. 665, Income Accruing After Payment or Delivery
Cited
 60 O.S. 669, Authority and Responsibility for Control and Management of Unclaimed Property Fund
Discussed at Length
 60 O.S. 670, Unclaimed Property - Determination of Amount - Payment of Amounts in Excess
Discussed at Length
 60 O.S. 671, Actions upon Insufficient Reserve
Discussed at Length
 60 O.S. 672, Care, Custody, and Management of Reserve Fund
Cited
 60 O.S. 674, Claim of Interest in Abandoned Property
Discussed at Length
 60 O.S. 675, Determination of Claims - Payment - Claims Against Mineral Owner's Fund
Discussed
Title 71. Securities
 Cite
Name
Level

 71 O.S. 1-101, Short Title
Cited