2012 OK 2

**Senator Jim WILSON, Plaintiff/Appellant,**

v.

**STATE of Oklahoma ex rel. STATE ELECTION BOARD, Paul Ziriax, in his capacity as Secretary of the Oklahoma State Election Board, Defendants/Appellees,**

**Senator Brian Bingman, in his official capacity as President Pro Tempore of the Oklahoma State Senate, Representative Kris Steele, in his official capacity as the Speaker of the Oklahoma House of Representatives, Intervenor Defendants/Appellees.**

No. 110,042.

Supreme Court of Oklahoma.

Jan. 17, 2012.

Mark Hammons, Hammons, Gowens & Associates, Oklahoma City, Oklahoma, for appellant.

Neal Leader and Nancy Zerr, Assistant Attorney Generals, Oklahoma City, Oklahoma, for appellees State Election Board and Paul Ziriax.

Elizabeth J. Barnett and Robert G. McCampbell, Crowe & Dunlevy PC, Oklahoma City, Oklahoma, and Richard Lee Slater, Oklahoma City, Oklahoma, for intervenor Senator Brian Bingman.

Ashley Kemp, Oklahoma House of Representatives, Oklahoma City, Oklahoma, for intervenor Representative Kris Steele.

TAYLOR, C.J.

¶ 1 Senator Wilson filed the genesis of this present appeal in the district court as a petition seeking to have State Senate Redistricting Act of 2011 (2011 Act), 14 O.S.2011, 80.35–80.35.4 (S.B.821), declared invalid after this Court rejected his attempt to have the 2011 Act declared unconstitutional in *Wilson v. Fallin*, 2011 OK 76, 262 P.3d 741 (*Wilson I* ). In *Wilson I*, Senator Wilson attacked the 2011 Act as invalid because it failed to create Senate districts which as nearly as possible preserve the factors of "compactness, political units, historical precedents,

economic and political interests." In his petition in the present case filed against the State Election Board and its secretary, Senator Wilson makes verbatim the same allegations as he did in *Wilson I*. However, he now avers that this Court determined in *Wilson I* "that the District Court has jurisdiction over challenges asserting political gerrymandering and that the standards related to 'population, compactness, area, political units, historical precedents, economic and political interest, contiguous territory' are both enforceable and sufficiently clear to guide [the district court] in the determination of such a challenge.'" As in *Wilson I*, nowhere in his filings in the present case does Senator Wilson allege that the Legislature did not give consideration to the extent feasible to the local-interest factors he sets out in his petition. He again merely states that his redistricting plan is better than the plan passed by the Legislature and signed by the Governor.

¶ 2 The President Pro Tempore of the Oklahoma State Senate and the Speaker of the Oklahoma House of Representatives intervened and, along with the defendants, filed motions to dismiss. The motions to dismiss all allege that the district court lacks subject matter jurisdiction over the suit for three reasons: (1) the district court lacks jurisdiction to hear the claim because the same claim was presented and resolved by this Court in *Wilson I*, (2) the Supreme Court has exclusive jurisdiction over a claim that the 2011 Act violates Article V, Section 9A of the Oklahoma Constitution, and (3) the present attack was brought after the expiration of the sixty-day period prescribed by Article V, Section 11C of the Oklahoma Constitution. The defendants also contend that the petition fails to state a claim upon which relief can be granted in the district court and that Senator Wilson lacks standing in the district court.

¶ 3 Senator Wilson filed replies to the intervenors' and defendants' motions to dismiss. Senator Wilson submits that this Court expressly declined in *Wilson I* to address the political gerrymandering claim and that this Court in *Wilson I* "unanimously expressly agreed that population, compact-

ness, area, political units, historical precedents, economic and political interests, contiguous territory and other factors set out in the Oklahoma Constitution are valid and enforceable." After a hearing, the district court granted the motions to dismiss reasoning that this Court had previously decided the issue in *Wilson I*.

## I. STANDARD OF REVIEW

■■■ ¶ 4 This Court subjects a trial court's judgment dismissing a petition to *de novo* review. *Darrow v. Integris Health, Inc.*, 2008 OK 1, ¶ 7, 176 P.3d 1204, 1208. When evaluating a motion to dismiss, the court examines only the controlling law, not the facts. *Id.* Thus, the court must take as true all of the challenged pleading's allegations together with all reasonable inferences that can be drawn from them. *Id.* Motions to dismiss are generally disfavored and granted only when there are no facts consistent with the allegations under any cognizable legal theory or there are insufficient facts under a cognizable legal theory. *Id.* We review the motions to dismiss under this standard.

■■ ¶ 5 A determination of whether the preclusion doctrine applies is solely a question of law if "(1) the facts are undisputed, (2) the preclusion question can be answered solely by reviewing the judgment put forward as the bar, or (3) the preclusion determination can be made solely by inspection of the record of the proceeding(s) culminating in the judgment put forward as the bar." *Feightner v. Bank of Okla.*, 2003 OK 20, ¶ 3, 65 P.3d 624, 627 (citations omitted). Here the application of the preclusion doctrine is a question of law because the determination can be made solely by *de novo* review of the record on appeal and consideration of this Court's opinion in *Wilson I*. *Id.*

## II. FAILURE TO STATE A CLAIM AND ISSUE/CLAIM PRECLUSION

¶ 6 The defendants and intervenors urge that, in *Wilson I*, this Court decided the issue presented by the present petition when it severed the local-interest factors from Ar-

ticle V, Section 9A of the Oklahoma Constitution. They continue that, after *Wilson I*, there is no language in Section 9A upon which relief can be granted to Senator Wilson based on his allegations presented here. Senator Wilson counters that, not only did this Court leave intact the local-interest factors of Section 9A as it was adopted in 1964, but unanimously stated that those interest are valid and enforceable in the district court. The failure to state a claim upon which relief can be granted and the issue/claim preclusion defenses are intertwined so that if this Court severed the local-interest factors from Section 9A, then Senator Wilson has no cognizable claim for relief.

¶ 7 However, we need not address whether the local-interest factors were severed from Section 9A by *Wilson I*. Senator Wilson misstates Section 9A's language concerning the local-interest factors. The actual language in Section 9A upon which Senator Wilson relies provides: "In apportioning the State Senate, **consideration shall be given** to population, compactness, area, political units, historical precedents, economic and political interests, contiguous territory, and other major factors, **to the extent feasible.**" (Emphasis added.) Senator Wilson views this language as requiring the Legislature to provide a redistricting plan "which create[s] Senate districts which as nearly as possible provide for compactness, political units, historical precedents, economic and political interests." Section 9A's language is not as restrictive on the Legislature as Senator Wilson argues. Further, Senator Wilson has not alleged that the Legislature failed to consider these local-interest factors to the extent feasible. If all the factual allegations in Senator Wilson's petition are taken as true, he has failed to present a cognizable claim based on the failure of the Legislature to consider the specific factors to the extent feasible.

¶ 8 To avoid confusion in the future, it is necessary that we address Senator Wilson's assertions. In *Wilson I*, this Court determined that the county-based apportionment formula in Article V, Section 9A of the Oklahoma Constitution violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution under *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). This Court held that the 2011 State Senate Redistricting Act complies with Article V, Section 9A of the Oklahoma Constitution. *Id.* ¶ 0, 262 P.3d at 742. Thus, Senator Wilson's reliance solely on Section 9A as the basis for invalidating the 2011 Act must fail. Taking as true all the factual allegations in his complaint filed in the district court, Senator Wilson has not presented a claim upon which relief can be granted.

¶ 9 In addition to Senator Wilson's failing to present a claim for which relief can be granted, Senator Wilson has presented the identical issue and claim in the district court as he presented to this Court in *Wilson I* and against the same parties. Under the doctrine of claim preclusion, known at common law as res judicata, "a final judgment on the merits of an action precludes the parties from relitigating not only the adjudicated claim, but also any theories or issues that were actually decided, or could have been decided, in that action." *Read v. Read,* 2001 OK 87, ¶ 16 & n. 18, 57 P.3d 561, 567 n. 18. Often the most difficult aspect of applying claim preclusion is in defining the claim. *Miller v. Miller,* 1998 OK 24, ¶ 23, 956 P.2d 887, 896. Here the difficulty does not exist because Senator Wilson has made verbatim the same allegations in his petition as he did in *Wilson I.* There can be no doubt that Senator Wilson's present claim that the 2011 Act does not comply with Article V, Section 9A of the Oklahoma Constitution is barred by the doctrine of claim preclusion.

¶ 10 In summary, the district court properly dismissed Senator Wilson's petition because he has failed to state a claim upon which relief can be granted and because his claim is barred by the doctrine of claim preclusion having been adjudicated against him in *Wilson I.* Because of our resolution, we need not address whether the present attack was brought after the expiration of the sixty-day period prescribed by Article V, Section 11C of the Oklahoma Constitution. The dismissal order of the district court is affirmed.

**AFFIRMED.**

CONCUR: TAYLOR, C.J., COLBERT, V.C.J. (by separate writing), and KAUGER

(joins Colbert, V.C.J.), WATT (joins Colbert, V.C.J.), WINCHESTER, EDMONDSON, REIF (joins Colbert, V.C.J.), COMBS (joins Colbert, V.C.J.), and GURICH (joins Colbert, V.C.J.), JJ.

COLBERT, V.C.J., with whom KAUGER, WATT, REIF, COMBS, and GURICH, JJ., join, concurring.

¶1 I concur in today's decision. I write separately to dispel any belief that *Wilson I* stands for the proposition that this Court will not address a claim of political gerrymandering, minority-vote dilution, or any other form of voter discrimination pursuant to the procedure provided in sections 11C and 11D of Article V of the Oklahoma Constitution and the standard set forth in section 9A for determining whether an apportionment treats voters equally. The duty to adjudicate such claims is placed squarely on this Court by the accelerated procedures outlined in section 11C [1] of Article V. Under section 11D,[2] this Court "shall determine" whether the challenged apportionment provision is in compliance with the apportionment formula of section 9A as modified by this Court in *Wilson I*, 2011 OK 76, ¶15, 262 P.3d 741, 746 ("While the language defining the county-based aspect of the apportionment formula must be severed, the other provisions in section 9A can be left standing."). When this Court determines that a petitioner has asserted a prima facie claim concerning the apportionment formula, the matter will be referred to the District Court, a Special Master, or a Referee for the intensive fact determinations necessary to inform this Court as to whether the apportionment statute meets the constitutional requirement of voter equality by applying the factors listed in section 9A.

¶2 In *Wilson I*, the petitioner failed to present a prima facie claim of political gerrymandering and therefore there was no need for determinations of fact. This Court resolved the merits of the political gerrymandering claim as a matter of law pursuant to sections 11C and 11D of Article V of the Oklahoma Constitution. That claim was unsuccessful.

¶3 *Wilson I* should not be understood to hold that no claim of political gerrymandering will be entertained by this Court. It has been well settled through this Court's enduring jurisprudence, in interpreting the Oklahoma and United States Constitutions, that voter equality and due process be achieved no matter whether the claim is political gerrymandering, minority vote dilution, or any other form of invidious discrimination. In today's shifting and transforming communities, no longer can we place those claims in a square box. As long as a standard and a process continue to be constitutionally mandated by the state and federal constitutions, this Court will continue to adjudicate all claims of voter inequality.

---

1. The Oklahoma Constitution provides the following procedure for challenging apportionment:

   Any qualified elector may seek a review of any apportionment order of the Commission, or apportionment law of the legislature, within sixty days from the filing thereof, by filing in the Supreme Court of Oklahoma a petition which must set forth a proposed apportionment more nearly in accordance with this Article. Any apportionment of either the Senate or the House of Representatives, as ordered by the Commission, or apportionment law of the legislature, from which review is not sought within such time, shall become final. The court shall give all cases involving apportionment precedence over all other cases and proceedings; and if said court be not in session, it shall convene promptly for the disposal of the same.
   Okla. Const. Art. V, § 11C.

2. The Oklahoma Constitution requires this Court to review the challenged apportionment for compliance with section 9A by providing:

   Upon review, the Supreme Court shall determine whether or not the apportionment order of the Commission or act of the legislature is in compliance with the formula as set forth in this Article and, if so, it shall require the same to be filed or refiled as the case may be with the Secretary of State forthwith, and such apportionment shall become final on the date of said writ. In the event the Supreme Court shall determine that the apportionment order of said Commission or legislative act is not in compliance with the formula for either the Senate or the House of Representatives as set forth in this Article, it will remand the matter to the Commission with directions to modify its order to achieve conformity with the provisions of this Article.
   Okla. Const. Art. V, § 11D.