2012 OK 67

**In re INITIATIVE PETITION NO. 396, STATE QUESTION NO. 763.**

Nos. 110610, 110611.

Supreme Court of Oklahoma.

June 28, 2012.

**ORDER**

¶ 1 Pursuant to 34 O.S.2011, 8(B), and after examining the briefs and hearing the oral argument of June 21, 2012, this Court finds that Initiative Petition No. 396, State Question No. 763 does not violate the Constitution of the State of Oklahoma, nor the Constitution of the United States.

¶ 2 The single subject rule found in Article 24, § 1 of the Constitution of the State of Oklahoma is not violated. We find that all portions of the proposed amendment are germane to the subject of Initiative Petition No. 396, State Question No. 763.

¶ 3 The Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States is not violated. Neither an invidious classification nor any deprivation of a fundamental interest is shown, and there is a rational basis for the provisions within Initiative Petition No. 396, State Question No. 763.

CONCUR: KAUGER, WINCHESTER, EDMONDSON, REIF and GURICH, JJ.

DISSENT: TAYLOR, C.J., (The provisions of this initiative petition violate the Constitutional mandates of strict regulation of alcohol, single subject rule and Equal Protection. I would not approve it.), COLBERT, V.C.J. (by separate writing), WATT, J. and COMBS, J. (by separate writing).

COLBERT, V.C.J., with whom WATT, J. joins, dissenting.

¶ 1 In its unnecessary haste to dispose of this matter with a one-page order containing legal conclusions only, this Court fails to explain *any* rationale for today's decision. Close examination of the proposed constitutional amendment however, demonstrates serious constitutional infirmities which this Court has never addressed.

¶ 2 Initiative Petition No. 396, State Question No. 763, is proposed for a vote of the people by Oklahomans for Modern Laws and others. This protest is brought by two public interest groups, Fighting Addiction Through Education and the Oklahoma Prevention Policy Alliance, which challenge the constitutionality of the proposed measure. Additionally, one of the organizations challenges the ballot title and gist. No mention of that challenge appears in the majority's abbreviated order. The proposed ballot title of Initiative Petition No. 396 states:

This measure adds a new Section 4.A and amends Section 10 of Article 28 of the State Constitution. It allows for the retail sale of wine for off-premises consumption in warehouse clubs, superstores, supermarkets and other grocery (except convenience) stores. It provides for a grocery store wine license. Such sales of wine would only be authorized after being approved at an election by the voters in counties with a population of 50,000 or more persons. The sale of wine to persons under 21 years of age would be prohibited. The measure provides for the days and hours, taxation on wine sales, fees for licences and purchase and distribution of wine to be the same as for retail package stores. It allows corporations to hold grocery store wine licenses. It limits the number of locations by a licensee to six. It provides other limits on licenses. It would allow grocery store wine licenses to be held by corporations and other businesses from outside the state. It would allow an election to be called by the county commissioners or by a petition of registered voters.

¶ 3 Under Oklahoma's current scheme of alcohol regulation, Oklahoma resident sole proprietors and partnerships, but not corporations, are allowed to sell wine and other liquor in package stores. The scheme is one of "strict regulation" of alcoholic beverages, Okla. Const. art. II, § 28, and it is designed to maintain personal responsibility for the sale of alcohol by package stores. *See, Mey-*

*er v. Okla. Alcoholic Beverage Laws Enforcement Comm'n,* 1995 OK CIV APP 11, ¶ 13, 890 P.2d 1361, 1364. A license for a package store is limited to one location.

¶ 4 Wine has become a large and lucrative commodity in Oklahoma and it generates an enormous amount of revenue from its sale. The proposed measure departs from Oklahoma's regulation of wine in a number of significant ways. It would no longer treat wine as liquor when it is sold in a grocery store and instead it would essentially place it in a new category between 3.2 percent beer, which is sold in grocery and convenience stores for off-premises consumption, and intoxicating liquors, which are sold for off-premises consumption in package stores only. It would allow for the sale of wine in grocery stores, but not convenience stores. The proposed measure calls for a statewide vote to determine whether the Oklahoma Constitution will be amended to permit counties of 50,000 or more population to vote on whether wine will be sold in grocery stores.

¶ 5 Only select grocery stores, however, would be allowed to participate in and benefit from the sale of wine. Only large grocery businesses, those with over 25,000 square feet of floor space, could sell wine; the smaller grocers could not. They could do so in multiple locations. Further, only stores located in counties with a population of 50,000 or more persons would be eligible for a license, provided that voters in the county approved such sales. Additionally, in counties that have approved such sales, out of state corporations would be permitted to purchase multiple licenses for the sale of wine.

¶ 6 The proposed ballot measure suffers from a number of constitutional infirmities; some were identified by the protestants and some were not. At least two of them merit discussion.

¶ 7 The Fourteenth Amendment's promise of equal protection prohibits regulatory classifications that are arbitrary and capricious or are not rationally related to a legitimate legislative goal.[1] The proposed measure creates two classes of grocery store owners within counties of 50,000 or more which have approved the sale of wine in grocery stores; those with a floor space larger than 25,000 square feet and smaller grocery stores. No plausible rational basis for this classification has been offered and the majority opinion fails to provide one.

¶ 8 The economic advantage which the proposed measure would provide to large grocers, most of which are owned by out-of-state corporations, is a radical change from the locally-owned, sole proprietor or partnership approach that the voters in Oklahoma have adopted to regulate the sale of liquor. It would shift away the individual responsibility for regulation provided in the package store approach to the corporate interests of large chain corporate grocers. It will seriously impact the tax revenues of the rural localities that are near urban centers. That loss of revenue will certainly impact the schools and local governments that rely on such revenues.

¶ 9 Additionally, the measure creates two classes of counties based on population. The proposed measure creates an urban class that will enjoy the convenience of grocery store wine sales and the accompanying revenues which benefit local schools and local government. The measure also creates a rural class that will never enjoy the convenience or benefit of such sales merely because fewer than 50,000 people live in their county.

¶ 10 The proponents of the measure have not identified a rationale for treating the two classes of similarly situated residents differently except to say that fewer residents equates to fewer police officers to enforce the regulation of the sale of wine in grocery stores. This asserted rationale for the classification is not rationally related to a need to classify residents for purposes of the proposed measure. Therefore, to arbitrarily put a requirement of 50,000 population and 25,000 square feet without a rational basis articulated, arguably constitutes deliberate and systemic invidious discrimination and disparate treatment of a class of people constituting taxpayers, homeowners, and children being educated in those communities that have a population of less than 50,000. The proposed measure fails the rational relationship

---

1. The cases cited in Justice Combs' dissent in this matter adequately demonstrate this rule of law.

test and therefore it violates the Equal Protection Clause of the Fourteenth Amendment and Article V, section 46 of the Oklahoma Constitution.

¶ 11 The majority treats the "rational relationship" test as if it were an automatic pass for any economic regulation that does not involve a suspect class. Apparently it has failed to realize that the presence of a suspect class would invoke strict scrutiny, not the rational basis test. However, in applying even the lowest level of scrutiny, a legitimate and rationally-related reason for classifying similarly situated individuals differently must be articulated. An adequate and meaningful equal protection analysis must consist of more than the majority's one-sentence conclusion of law.

¶ 12 The arbitrary population classification also impacts the one-person-one-vote principle of the Fourteenth Amendment. "Other rights, even the most basic, are illusory if the right to vote is undermined. Our Constitution leaves no room for classification of people in a way that unnecessarily abridges that right." *Wesberry v. Sanders,* 376 U.S. 1, 17–18, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964). The population classification will diminish the rural resident's vote in two ways. First, if adopted, the measure provides a benefit in convenience and tax revenues only on the populous counties. Therefore, rural voters are being asked to vote on a measure that can benefit only those who live or shop in urban areas. The benefits are by design reserved only to the populous counties. Additionally, the number of voters in urban areas far exceeds that of rural voters.[2] The rural vote will therefore not significantly impact the vote as to adoption of the proposed measure. As a result, the vote of a rural resident will be less valuable than that of an urbanite in terms of both its relative effect on the election and any benefit the rural voter will actually enjoy from the measure.

¶ 13 As recently as January of this year, a majority of this Court, speaking in the context of a redistricting challenge, expressed a commitment to "continue to adjudicate all claims of voter inequality." *Wilson v. State ex rel. State Election Bd.,* 2012 OK 2, ¶ 3, 270 P.3d 155, 159 (Colbert, V.C.J., with whom Kauger, Watt, Reif, Combs, and Gurich, JJ., join concurring). Today's retreat from that commitment is troubling.

¶ 14 Although the voters of Oklahoma have reserved to themselves the right to propose changes to the Oklahoma Constitution, those proposals must pass constitutional muster. It is this Court's duty to insure that challenges to initiative petitions are carefully considered and thoroughly analyzed. The majority's failure to adequately address the constitutional issues presented in a matter that potentially impacts the right to a meaningful vote and the right of equal treatment among those similarly situated are matters that require more than perfunctory conclusions concerning this protest.

COMBS, J., with whom COLBERT, V.C.J. and WATT, J., join, dissenting

¶ 1 I must dissent to the majority's order. Although I do not believe the ballot title for Initiative Petition 396 violates the single subject rule found in Article 24, § 1, I cannot reach the same conclusion as to the Equal Protection Clause.

¶ 2 The proposal limits the applicability of the amendment to those counties having a population of 50,000 or more persons according to the most recent federal decennial census. These counties [1] would have the opportunity to determine on an individual county basis by a vote of the public to approve the provisions of this amendment. This process is identical to the option counties have with the provisions for liquor by the drink, previously adopted by popular vote. See, Okla. Const. art. 28, § 4. The difference however is

2. Population data provided by the Oklahoma Department of Commerce on its website demonstrate that in 2010 approximately 66 per cent of Oklahoma residents were located within the 15 counties with populations in excess of 50,000. In 2000, those 15 counties contained approximately 63 per cent of the population of Oklahoma. The remaining population resided in the other 62 counties.

1. Counties affected include: Oklahoma, Tulsa, Cleveland, Comanche, Canadian, Rogers, Payne, Wagoner, Muskogee, Creek, Pottawatomie, Garfield, Grady, Washington and LeFlore.

that all counties, regardless of an arbitrary population number have the fundamental right to vote to allow or disallow the provisions of liquor by the drink. This constitutional amendment, if approved by popular vote by the citizens of the entire state, provides no opportunity for the voters in counties having populations less than 50,000 to exercise their right to vote to participate.

¶ 3 Oklahoma presently has 62 counties who would not have the fundamental right to vote on the issue. Each of the 15 counties above the 50,000 limitation has approved liquor by the drink. Statewide, 51 counties have approved liquor by the drink,[2] therefore 36 counties that have approved liquor by the drink would have no opportunity to vote on the provisions to allow wine sales in grocery stores.

¶ 4 Although this Court on many occasions has upheld population based criteria in determining whether a law was a special or general law, the test for constitutionality is not numerical, but rather whether the classification is clearly capricious, arbitrary, and wholly unrelated to the Act. *See Burks v. Walker,* 1909 OK 317, ¶ 23, 109 P. 544, 549; *City of Enid v. Public Employees Relations Board,* 2006 OK 16, ¶ 15, 133 P.3d 281, 287; *Justice Kauger's concurring opinion in Jacobs Ranch, L.L.C. v. Smith,* 2006 OK 34, 148 P.3d 842.

¶ 5 The rational basis for the population limitation given by the proponents is the impact on law enforcement agencies in the enforcement of the law on counties having fewer than 50,000 people. The argument being that these "smaller" counties would be unable to effectively enforce the grocery store sales. Shouldn't the individual county be allowed to consider such an impact as one aspect of approval or rejection of grocery store wine sales? The Equal Protection Clause of the United States Constitution states "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws."[3] The Equal Protection Clause does not forbid classifications, but keeps governmental decision makers from treating differently persons who are in all relevant respects alike.[4] Each of Oklahoma's 77 counties will have the right to vote on this question and the amendment to the Constitution. Each County should be treated equally and have the right to vote on the applicability of these amendments, not just the 15 largest counties in the State.

¶ 6 Where the impact on local law enforcement is a concern, who better to determine the impact than the citizens themselves by going to the polls and exercising their fundamental right to vote.

¶ 7 I respectfully dissent.

---

**2.** ABLE Commission as of 1–25–2010

**3.** U.S. Const. amend. XIV, § 1.

**4.** *Coalition for Equal Rights, Inc. v. Ritter,* 517 F.3d 1195 (10th Cir.2008).