BANK OF AMERICA v. DASOVICH



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:BANK OF AMERICA v. DASOVICH

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 BANK OF AMERICA v. DASOVICH
2018 OK CIV APP 22
415 P.3d 547
Case Number: 115574
Decided: 07/18/2017
Mandate Issued: 03/28/2018
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2018 OK CIV APP 22, 415 P.3d 547

 

BANK OF AMERICA, N.A., Successor by Merger to BA MORTGAGE, LLC, Successor in Interest by Merger of NATIONSBANC MORTGAGE CORPORATION, Successor in Interest by Merger to BOATMAN'S NATIONAL MORTGAGE, INC. f/k/a BANK IV OKLAHOMA, N.A., Plaintiff/Appellant,
v.
W. JEFFREY DASOVICH a/k/a WILLIAM JEREMY DASOVICH and SALLY W. DASOVICH a/k/a SALLY WITNEY DASOVICH, Husband and Wife, Defendants/Appellees,
and
OCCUPANTS OF THE PREMESES, STATE OF OKLAHOMA ex rel. OKLAHOMA TAX COMMISSION, UNITED STATES OF AMERICA ex rel. INTERNAL REVENUE SERVICE and JEFF BEELER, Defendants.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE DON ANDREWS, TRIAL JUDGE

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS

Jon H. Patterson, BRADLEY ARANT BOULT CUMMINGS, LLP, Birmingham, Alabama, for Plaintiff/Appellant

F. Smith Barnes, F. SMITH BARNES, A PROFESSIONAL CORPORATION, Oklahoma City, Oklahoma and
C. Austin Reams, REAMS LAW, Oklahoma City, Oklahoma, for Defendants/Appellees

DEBORAH B. BARNES, PRESIDING JUDGE:

¶1 Bank of America, N.A. (BANA) appeals from the district court's dismissal of its action to enforce a federal foreclosure judgment it obtained against W. Jeffrey Dasovich and Sally W. Dasovich. Based on our review of the law and the record presented, we reverse and remand for further proceedings.

BACKGROUND

¶2 In 2007, BANA filed a foreclosure action against the Dasoviches in Oklahoma County District Court. The Dasoviches were served and filed an answer. However, prior to filing their answer, the case was removed, on diversity grounds, to the United States District Court for the Western District of Oklahoma. Thereafter, BANA filed a motion for summary judgment in the federal case, to which the Dasoviches filed an objection and response. In August 2008, the federal court granted BANA's motion as to its right to foreclose, but denied the motion as to the amount of damages. On February 13, 2009, BANA filed another motion for summary judgment as to the amount of damages. The federal court sustained that motion by separate order and on March 19, 2009, the federal court entered its foreclosure judgment awarding judgment to BANA in rem and in personam against the Dasoviches in the amount of $201,597.82 with interest on that amount from November 2006 at the rate of 6.875% per annum, and a reasonable attorney's fee and costs.

¶3 In the foreclosure judgment, the federal court stated:

[T]his case [is] remanded to the District Court of Oklahoma County, Oklahoma[,] and a Special Execution and Order of Sale issue out of the office of said District Court Clerk, directed to the Sheriff to levy upon, advertise and sell, after due and legal appraisement, the [subject] real estate and premises . . . , subject to unpaid real estate ad valorem taxes and/or special assessments, if any, and pay the proceeds of said sale to the Clerk of the District Court of Oklahoma County, as provided by law, for application as follows: [to payment for the costs of the sale, to BANA for payment of its foreclosure judgment, and to payment of the junior lien holders.]

Said order reserving the right of [BANA] to recall said execution by oral announcement and/or further order of the District Court of Oklahoma County prior to the sale.

The foreclosure judgment stated "[i]ncluded in the remand are all matters pertaining to the enforcement of this judgment, including but not limited to confirmation of the sale."

¶4 On June 23, 2010, the federal court clerk for the western district sent a letter to the Oklahoma County Court Clerk that was filed in the Oklahoma County court case on July 6, 2010. The letter stated that pursuant to the March 2009 foreclosure judgment, "this case was remanded to your court for all matters pertaining to the enforcement of [the foreclosure] judgment, including but not limited to confirmation of the sale." It also stated that "enclosed" was a certified copy of the remand order and a certified copy of the docket sheet in the foreclosure action.

¶5 On July 30, 2010, BANA issued a Special Execution and Order of Sale out of the office of the Oklahoma County Court Clerk and Sheriff's Sale was set for September 16, 2010, but was later recalled. An alias special execution and order of sale was issued in October 2010, and Sheriff's Sale was set for December 2010. On November 24, 2010, the Dasoviches filed an application for temporary restraining order in which they admitted they were made aware of the foreclosure judgment in mid-August 2010 when they received notice of the Sheriff's Sale. Among other matters, they claimed they had no notice of the filing of the motion for summary judgment in the federal case, had made attempts to get certain financial information from BANA in November 2010 via subpoena duces tecum but had received no documentation from BANA's attorneys, and were "desirous of resolving their continuing dispute with [BANA]."

¶6 On May 25, 2016, the Dasoviches filed a motion to dismiss BANA's action for lack of jurisdiction and failure to properly register the foreclosure judgment pursuant to the Uniform Enforcement of Foreign Judgments Act, 12 O.S. 2011 §§ 719-726. Between November 2010 and May 2016, BANA had issued two other alias special executions and order of sale, the Dasoviches filed three other applications for temporary injunction, the court entered an order sustaining the Dasoviches' fourth application for temporary restraining order, and the court granted BANA's motion to vacate the temporary restraining order and set an evidentiary hearing for March 2016 to determine the amount needed to satisfy the debt obligation, but that hearing was postponed until August 2016.

¶7 The hearing apparently did not occur; however, on August 18, 2016, having previously received the briefs and arguments of the parties, the trial court heard arguments on the Dasoviches' motion to dismiss. On November 2, 2016, the Oklahoma district court entered its order sustaining the Dasoviches' motion finding that the "certified copy" of the foreclosure judgment filed by the federal court clerk did not satisfy the requirements of the UEFJA "of filing an 'authenticated' copy of the judgment. Accordingly, this Court lacks jurisdiction over any further post-judgment execution proceedings in this matter."

¶8 BANA appeals.

STANDARD OF REVIEW

¶9 The trial court dismissed BANA's action because it determined it lacked jurisdiction to proceed in the matter. "The standard of review for questions concerning the jurisdictional power of the trial court to act is de novo." Dilliner v. Seneca-Cayuga Tribe of Okla., 2011 OK 61, ¶ 12, 258 P.3d 516 (citation omitted). Similarly, this Court subjects a trial court's order granting a motion to dismiss to de novo review. Wilson v. State ex rel. State Election Bd., 2012 OK 2, ¶ 4, 270 P.3d 155. Motions to dismiss are generally disfavored. Id.[1] 

ANALYSIS

I. Nature of Foreclosure Judgment: Foreign Judgment

¶10 In its statement of the issues to be adjudicated on appeal, BANA asserts, "Whether the docket of the federal action is automatically incorporated into the state court docket is a matter of first impression for the Oklahoma Supreme Court and is likely the determinative issue in this appeal."[2] In its supplemental briefing in opposition to the Dasoviches' motion to dismiss, BANA cites a number of cases from other jurisdictions in which those state appellate courts gave effect upon remand to pleadings and motions filed in federal cases prior to remand. As BANA states, the reason many of these courts do so is because "interests of efficiency and judicial economy favor a policy of giving continued effect to pleadings and motions filed in federal court prior to remand. This rule mirrors the federal post-removal procedure of picking the case up where it left off and avoids the necessity of duplicative filings." Crumpton v. Perryman, 956 P.2d 670, 675 (Colo. App. 1998) (citations omitted).

¶11 In all of the cases cited by BANA, however, the cases were remanded because the federal court determined it did not have subject matter jurisdiction, either because it lacked diversity of citizenship or a federal question,[3] or because the federal court exercised its discretion to remand state claims properly removed with the federal jurisdiction claim after the federal claim was resolved.[4] In none of those cases did the federal court render final judgment on the claim and remand for enforcement of its judgment in the state court and no pendant state claim remained.[5] BANA has not cited, nor have we found, statutory or decisional authority that gives a federal court the discretion, under the circumstances presented here, to remand a case over which the federal court properly exercised jurisdiction.[6]

¶12 We, therefore, conclude the foreclosure judgment in this case is a foreign judgment that BANA may seek to enforce in Oklahoma.

II. District Court's Jurisdiction

¶13 As BANA concedes, it may seek enforcement of a foreign judgment in Oklahoma courts either through filing a lawsuit to enforce that judgment or through the provisions of the Uniform Enforcement of Foreign Judgments Act, 12 O.S. 2011 §§ 719-726.[7] It asserts it "substantially complied with the spirit of the UEFJA" and, thus, the trial court erred in dismissing the case because the court determined it lacked jurisdiction. BANA claims it substantially complied because the clerk of the court from which the foreclosure judgment was entered filed a certified copy of that judgment along with a certified copy of the docket sheet from the federal action on July 6, 2010.

¶14 The motion and arguments made by the Dasoviches in support of their motion call for dismissal "with prejudice" of BANA's "action" because, they claim, it did not comply with the mandatory requirements of the UEFJA. They argue the foreclosure judgment was not "properly registered" because it was not properly authenticated; it was not separately filed or file-stamped; the court clerk did not file proof of mailing of notice of the filing of the foreign judgment to them; BANA did not file proof of mailing of notice of the filing of the foreign judgment to them; BANA did not make or file an affidavit setting forth the name and last-known post office address of the judgment debtor and of the judgment creditor; and BANA did not pay the required filing fees to register a foreign judgment. The Dasoviches argue the trial court lacked jurisdiction to domesticate the foreclosure judgment because the UEFJA requirements are mandatory.

¶15 While the trial court sustained the Dasoviches' motion, the trial court did not expressly dismiss BANA's claim "with prejudice." The court determined an "authenticated" copy of the foreclosure judgment had not been filed; thus, it lacked jurisdiction "over any further post-judgment execution proceedings in this matter." The trial court did not grant BANA leave to amend or otherwise cure the defective registration as provided in 12 O.S. 2011 § 2012(G).[8] As explained by this Court in Pellebon:

The [Oklahoma] Supreme Court has interpreted this obligation in § 2012(G) to grant leave to amend "as a mandatory duty placed on trial courts, as long as the defect can be remedied." [Fanning v. Brown, 2004 OK 7, ¶ 23, 85 P.3d 841]. The trial court must as a general rule specify the deficiencies as to each claim which subject that claim to dismissal and either state that no amendment of the claim could cure the stated defect(s) or set a reasonable time for Plaintiff to amend in accordance with 12 O.S. 2011 § 2012(G).

2015 OK CIV APP 70, ¶ 16.

¶16 The question presented for our review is whether the trial court correctly determined as a matter of law that the authentication requirement is jurisdictional and whether the defect was curable.

¶17 The Dasoviches argue the defect is jurisdictional and cannot be cured relying on Vaughan v. Graves, 2012 OK 113, 291 P.3d 623, in which the Oklahoma Supreme Court stated:

A court may enforce a foreign judgment as if it had rendered it but only after the statutory registration requirements have been satisfied. This is true whether the attempt at enforcement of the foreign judgment is in the nature of execution or contempt. Until such time, the trial court lacks the authority to act. The fact that this matter was brought pursuant to the [Uniform Fraudulent Transfer Act] does not change the registration requirements. The foreign judgment must be filed in the county of the court from which remedies in the nature of execution will issue before that court can acquire jurisdiction.

Id. ¶ 16. The Dasoviches argue the trial court lacked the power to enforce the foreclosure judgment and BANA cannot "attempt to rescue an unregistered foreign judgment by belated registration," citing Vaughan, ¶ 17.

¶18 At issue in Vaughan was "the jurisdiction of the trial court to enforce orders in aid of execution of a foreign judgment or judgment collection remedies before a creditor has registered the foreign judgment in the county of the court from which execution issues." Id. ¶ 10.[9] In discussing the UEFJA, the Oklahoma Supreme Court explained that pursuant to 12 O.S. 2011 § 721, "the mere act of filing [the foreign judgment], in substance, transfers the properly authenticated foreign judgment into an Oklahoma judgment. The judgment may be enforced against the judgment debtor "in the same manner as any intra-state judgment." Vaughan, ¶ 12 (internal quotation marks omitted) (quoting Producers Grain Corp. v. Carroll, 1976 OK CIV APP 3, ¶ 8, 546 P.2d 285). The Supreme Court further explained, however, that 12 O.S. § 706(A) "applies to all judgments of courts of record of this state, and judgments of courts of the United States . . . which award the payment of money, regardless of whether such judgments also include other orders or relief"; however, § 706(D) "specifically requires that '[e]xecution shall be issued only from the court which granted the judgment being enforced.'" Vaughan, ¶ 13. "Thus, while domestication of a foreign judgment may be obtained by its filing in any county, execution of that foreign judgment requires that it be filed in the county of the court that enforces the judgment." Id. (footnote omitted).

¶19 In Vaughan, while the bankruptcy judgments were domesticated in July 2002 in Oklahoma upon their filing in Payne County, the county in which the debtors owned property, they were not filed in the Oklahoma County case until after the 2007 and 2010 orders in that case. It was in this context the Supreme Court stated, "The belated registration of the foreign judgment in 2011 did not authorize the trial court to retroactively enforce orders which were void for lack of jurisdiction." Id. ¶ 17. The Court further stated,

The 2011 judgment registration did not make the void portions of the prior orders any less so. "A trial court may not take judicial notice of findings of fact and conclusions of law encompassed within a void judgment." New findings of fact and conclusions of law regarding any attempt to enforce the bankruptcy judgments are required.

Id. ¶ 18 (citation omitted).

¶20 The issue presented in Vaughan is different from the one presented in the current appeal. Unlike the facts in Vaughan, here the foreclosure petition was filed in Oklahoma County against the Dasoviches in April 2007 and they filed an answer in June 2007. The case was then removed to the federal district court and a foreclosure judgment was entered in March 2009 against the Dasoviches and in favor of BANA. The foreclosure judgment also remanded the case to the Oklahoma County District Court for enforcement of its foreclosure judgment. On July 6, 2010, a letter to the Oklahoma County Court Clerk from the Deputy Court Clerk of the United States District Court for the Western District of Oklahoma dated June 23, 2010, was filed in the present case. That letter informed the Oklahoma County Court Clerk that pursuant to the foreclosure judgment the case was remanded to the state court for all matters pertaining to enforcement of the foreclosure judgment and stated "a certified copy of the remand order and a certified copy of the docket sheet" were enclosed. A copy of the foreclosure judgment was attached with an attestation from the Deputy Court Clerk that the judgment was "[a] true copy of the original." Thereafter, BANA repeatedly sought special execution on that judgment, an attempt at execution that the Dasoviches successfully thwarted over more than five years of litigation prior to the filing of their motion to dismiss. Unlike the bank in Vaughan, BANA does not seek to enforce any orders of the state district court entered prior to registration of the foreclosure judgment. Further, unlike the bank in Vaughan, a copy of the foreclosure judgment was filed in the very Oklahoma County court from which enforcement of that judgment was sought. The jurisdictional infirmity present in Vaughan is not present here.

¶21 While we agree that authentication of the foreign judgment pursuant to the UEFJA is a requirement to registering that judgment, we do not agree that lack of authentication is a jurisdictional requirement that cannot be waived by a party. In Concannon v. Hampton, 1978 OK 117, 584 P.2d 218, the Oklahoma Supreme Court was presented with an argument similar to the argument raised by the Dasoviches. There, the defendant argued a sister-state judgment was not authenticated as required by § 721 and, therefore, the district court lacked authority -- jurisdiction -- to enforce it under the UEFJA. Concannon, ¶ 3. In addressing the lack of authentication argument, the Supreme Court stated: "Authentication may be defined as the act of giving legal authority to a written instrument or a certified copy thereof, so as to render it legally admissible into evidence. . . . Authentication is evidentiary, not jurisdictional." Id. ¶ 7 (footnotes omitted). The Court held the defendant, who did not raise the issue of authentication at trial and who stipulated to the judgment's admissibility, "waived any objections to the lack of authentication[.]" Id.[10]

¶22 BANA asserts the Dasoviches waived any objections they might have had to authentication because during over five years of litigation in this action, they never objected to the lack of authentication. Further, we note, the Dasoviches do not, in fact, claim the foreclosure judgment is not authentic, though they argue they contest the "validity" of the foreclosure judgment, because they "'never received notification of the filing of the Motion for Summary Judgment' that led to the 'Foreclosure Judgment' and . . . they had not been aware that the 'Foreclosure Judgment' had been entered."[11] While the Dasoviches, unlike the defendants in Concannon, raised the issue of authentication below, their failure to raise that evidentiary defect for more than five years in the present case and their failure to assert what prejudice they suffered thereby -- as opposed to asserting some legal argument they may have about whether the foreclosure judgment is void or otherwise subject to collateral attack -- leads us to conclude they waived that evidentiary defect and the trial court has jurisdiction to proceed with this action.

¶23 Consequently, we conclude the trial court erred as a matter of law in dismissing BANA's action.[12]

CONCLUSION

¶24 We conclude the trial court erred in dismissing BANA's action on the federal foreclosure judgment. Accordingly, we reverse and remand the cause for further proceedings.

¶25 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

THORNBRUGH, V.C.J., and WISEMAN, J., concur.

FOOTNOTES

[1] The Dashoviches filed two motions on appeal: a motion to dismiss, which was denied by the Oklahoma Supreme Court; and a motion to strike a supplemental brief filed by BANA in the district court that was deferred by the Supreme Court to the decisional stage. We deny the motion to strike because while the authority set forth in the supplemental brief was not identified in BANA's briefs in response to the Dashoviches' motion to dismiss, the issue had been raised in the responsive briefs. Moreover, we do not conclude, as asserted by the Dashoviches, that the trial court did not consider the supplemental brief filed a week prior to the court's order even though it was filed one day late.

[2] While we agree with BANA that the Oklahoma Supreme Court has not yet addressed the issue of whether motions and pleadings filed in a federal case upon remand to the state court from which the case originated are automatically incorporated into the state case, another division of this Court has considered what federal filings are part of a state court file on remand. In Pellebon v. State ex rel. Board of Regents of the University of Oklahoma, 2015 OK CIV APP 70, 358 P.3d 288, in which after removal the federal court remanded because it determined it lacked subject matter jurisdiction, the appellate court addressed the pleadings in the state case after remand.

It appears that the parties and the trial court treated Plaintiff's federal "First Amended Complaint" as an "amended petition" although it has never been filed in this case. On remand from federal court after removal, the issue of the viability and effect to be given to pleadings filed in federal court is left to the state courts. 77 C.J.S. Removal of Cases § 180 (2015) ("As a general rule, the state court determines the effect of pleadings filed and proceedings taken in the federal court."); see also Ayres v. Wiswall, 112 U.S. 187, 190-91, 5 S. Ct. 90, 92 (1884) ("It will be for the state court, when the case gets back there, to determine what shall be done with pleadings filed and testimony taken during the pendency of the suit in the other jurisdiction."). Some state courts "have given effect to pleadings filed in federal court prior to a remand to state court." See Banks v. Allstate Indem. Co., 757 N.E.2d 776, 778 (Ohio Ct. App. 2001) (holding "a party need not refile documents in the court of common pleas after a case is remanded from federal court so long as that party makes the trial court aware of the filing's existence and, if challenged, shows proof of service on the other party at the time the document was filed in federal court"); see also New Hampshire v. Hess Corp., 982 A.2d 388, 393-95 (N.H. 2009) (giving effect to the first amended complaint filed in federal court before remand to state court and holding "the trial court did not err when it concluded that the first amended complaint remained viable after remand").

Pellebon, ¶ 17. The Pellebon Court, however, was persuaded by the approach taken by a Missouri court that held "it was error to enter a default judgment based on the failure to file a responsive pleading to the federal complaint [that] was not part of the state court file" because the plaintiff failed to comply with Missouri Supreme Court Rule requirements. Id. ¶ 18 (citation omitted). The Pellebon Court concluded:

To avoid any confusion or question regarding what federal documents have become incorporated into the state court file, we conclude, as Missouri has, that the better practice is to require Plaintiff to file a list of all documents filed in federal court that are to be made a part of the state court file and to provide a copy of each document to the court for filing in the state court case.

Id. ¶ 19. Thus, assuming the federal district court had discretion to remand enforcement of its judgment to the state court, Pellebon is persuasive authority that the filing of the federal court docket in the state case could become part of the state court file at least with respect to pleadings and motions filed in the federal case.

[3] Crumpton, 956 P.2d at 672 (remand after removal because removal was not permitted pursuant to statute upon which defendants relied for removal); Teamsters Local 515 v. Roadbuilders, Inc. of Tenn., 291 S.E.2d 698, 701 (Ga. 1982), overruled in part on other grounds, Shields v. Gish, 629 S.E.2d 244 (Ga. 2006) ("The time has [passed] when technical rules were applied to those who sought unsuccessfully to remove cases to the federal courts. We therefore hold that a timely answer filed in district court following timely removal of the action is sufficient to prevent a default in a state court if the case is subsequently remanded from district court.") (emphasis added) (citations omitted); Citizens Nat'l Bank of Grant Cnty. v. First Nat'l Bank in Marion, 331 N.E.2d 471, 475 (Ind. Ct. App. 1975) (federal court, having assumed jurisdiction upon defendants' petition for removal, remanded the cause to state court without ruling on motions to dismiss); Laguna Village, Inc. v. Laborers Int'l Union of N. Am., 672 P.2d 882, 883 (Cal. 1983) (after removal, federal court remanded to state court because no federal issues were presented); Grone v. N. Ins. Co. of N.Y., 130 A.2d 452, 453 (Pa. 1957) (cause properly removed to federal court on diversity grounds was later remanded to state court upon federal court's determination that diversity was lacking as to several defendants); Edward Hansen, Inc. v. Kearny Post Office Assocs., 399 A.2d 319, 320 (N.J. Super. Ch. Div. 1979) (after removal, federal court remanded to state court because diversity of citizenship was lacking; thus, it lacked jurisdiction); and Banks v. Allstate Indemn. Co., 757 N.E.2d 776, 776 (Ohio Ct. App. 2001) (remanded because federal court lacked diversity jurisdiction).

[4] McKethan v. Wells Fargo Bank, N.A., 779 S.E.2d 671, 673 (Ga. Ct. App. 2015) (remand was granted because federal court determined the only issues involved were state issues and no diversity jurisdiction existed); and Swarey v. Stephenson, 112 A.3d 534, 540 (Md. Ct. Spec. App. 2015) (case alleging both state claims and RICO claim removed to federal court and subsequently remanded on the state claims after RICO claim dismissed).

[5] In one of the cases upon which BANA relies the question presented to the appellate court was whether "orders" of the federal court must be given effect even though the federal court lacked subject matter jurisdiction at the time it rendered that order. New Hampshire v. Hess Corp., 982 A.2d 388 (N.H. 2009). The Hess Court concluded:

Moreover, even if the court order were material, after a case has been remanded for lack of subject matter jurisdiction, the effect to be given federal court orders is a matter of state policy. While federal court orders made before remand are not binding upon a state court, the state court nonetheless has discretion to give them effect.

Id. at 392 (citations omitted).

[6] For a discussion of the limited discretion a federal court has to remand a properly removed case, see Buchner v. F.D.I.C., 981 F.2d 816 (5th Cir. 1993).

[7] While BANA had that choice, 12 O.S. 2011 § 725, we note the judgment roll does not reveal that it filed a petition to enforce the foreclosure judgment or otherwise complied with procedural rules for bringing such an action.

[8] Section 2012(G) provides, in part, as follows: "On granting a motion to dismiss a claim for relief, the court shall grant leave to amend if the defect can be remedied and shall specify the time within which an amended pleading shall be filed."

[9] The debtors in Vaughan filed for bankruptcy in 1999. In 1995, the debtors became guarantors of a commercial loan from a bank. In 2002 the bankruptcy court denied a discharge of the bank's debt and entered judgment against the debtors in a certain sum and also entered an order for costs and attorney fees against debtors. The bank initiated various collection procedures against the debtors and registered the bankruptcy judgments in Payne County, the county in which the debtors' homestead was located. In 2001, while the bankruptcy stay was in effect, the bank filed a lawsuit in Oklahoma County against debtors' relatives and a family trust pursuant to the Uniform Fraudulent Transfer Act. In September 2007, the Oklahoma County trial court entered an order finding the debtors' income had been fraudulently transferred to a sham corporation to avoid garnishment of that income and ordered the corporation to turn over a percentage to the bank. Debtors, however, were not joined in the UFTA case until November 2007. In 2010, upon the bank's motion for contempt against debtors, the Oklahoma County trial court withdrew its 2007 order, but issued a new order finding one of the debtors in contempt of the 2007 order but giving the debtor an option to avoid imprisonment. In April 2011, the bank sought contempt to enforce the 2010 order. It was not until August 18, 2011, that the bank filed one of the bankruptcy judgments -- the one for costs and attorney fees -- in the UFTA case. In 2012, the Oklahoma County court entered an order for contempt of the 2010 order noting "open and willful violations" of both the 2007 and 2010 orders.

[10] The Concannon defendants also argued the plaintiff failed to give the notice required by § 722 because the notice that was provided did not list the plaintiff's address. Although strict compliance with the notice requirement had not occurred, the Concannon Court explained, "The purpose of the address requirements is to insure defendant will be informed of the proceeding." Id. ¶ 8. The omission of plaintiff's address, in the Court's view, "in no way prejudiced" the defendant. Id. 

Other courts have also addressed the issue of the effect of a judgment creditor's failure to strictly comply with the notice provisions of their state's version of § 722. For example, in Miller v. Eloie Farms, Inc., 625 P.2d 332 (Ariz. Ct. App. 1980), the Arizona appellate court addressed the issue of whether strict compliance with the notice requirements of the UEFJA "is a condition precedent to enforcement of a validly filed Oklahoma judgment in Arizona." Id. at 333. The court held "the failure to follow the statutory notice procedures [was] not fatal to the judgment" because "[t]here [was] abundant evidence that [the defendant's] statutory agent was aware that the Oklahoma judgment had been filed[.]" Id. See also The Cadle Co., II, Inc. v. Hubbard, 329 S.W.3d 706, 710 (Mo. Ct. App. 2010) ("When the judgment debtor has actual knowledge of the filing, the failure of the clerk and/or the judgment creditor to follow the notice provisions in the UEFJA is not prejudicial and provides no basis for a trial court to prohibit registration of the foreign judgment.") (citations omitted); State, Inc. v. Sumpter & Williams, 553 N.W.2d 719, 723 (Minn. Ct. App. 1996) (citing Concannon for the proposition that the purpose of the notice requirement is to assure notice of the judgment to the debtor). In Sparaco v. Sparaco, 309 A.D.2d 1029 (N.Y. App. Div. 2003), in which the defendant alleged several procedural deficiencies in his challenge to the entry of a Michigan judgment in New York, the appellate court stated:

Finally, defendant points out that plaintiff failed to comply with the service requirements of [the UEFJA] pursuant to which plaintiff was obligated to mail notice of filing of the foreign judgment to defendant within 30 days of the filing. Plaintiff apparently served copies of her affidavit and the certification of records on defendant within the allotted time, but did not specifically state in the notice that the judgment had been filed in New York. Nevertheless, the nature and content of the documents sent to defendant and defendant's prompt action thereafter seeking a stay make it clear that he was actually aware that the Michigan judgment had been filed in New York. Where, as here, no prejudice has resulted to defendant from this technical violation of [the UEFJA], [the trial court] did not err in rejecting [the] objection to the service as a defense to enforcement of the Michigan judgment.

309 A.D.2d at 1031 (citations omitted).

We note that in these cases a "technical" error occurred such that the notice attempted was not strictly in compliance with UEFJA notice requirements, while in the current appeal it appears no notice was issued by the clerk or BANA. However, like the judgment debtors in those cases, the Dasoviches had actual notice of the filing of the foreclosure judgment. The record demonstrates the Dasoviches had actual notice of the foreclosure judgment since about two months after the foreclosure judgment was filed in the present case and they have had an opportunity to contest the foreclosure judgment and have done so for more than five years of continuous litigation. The trial court did not identify lack of notice as a reason for its dismissal of BANA's action. We agree with the trial court's implicit finding that whatever defect may have been present as to notice has long since been resolved and the Dasoviches have suffered no prejudice as a result.

[11] We note the majority of the Dasoviches' argument about notice concerns their purported lack of notice of the filing of the motion for summary judgment in the federal case. They appear to argue the multiple applications for temporary injunction they filed in the present case concern this alleged deficiency that eventually resulted in the foreclosure judgment. This argument, however, does not support the trial court's dismissal of BANA's action because of needed registration requirements under the UEFJA. They are, instead, an attack on the foreclosure judgment itself. Whether such a collateral attack is permissible concerns facts and legal issues not encompassed within the dismissal order and this appeal.

[12] Given our conclusion, we find unpersuasive the Dasoviches' argument that the foreclosure judgment is now dormant because more than five years have lapsed since the judgment was filed in March 2009, citing 12 O.S. 2011 § 735. An execution on a foreclosure judgment is a special execution. Paschal Inv. Co. v. Atwater, 1935 OK 869, ¶ 0, 50 P.2d 357 (Syllabus by the Court) ("It has long been [s]ettled in this state that special execution is the proper process for enforcement of decrees of foreclosure of mortgages and other liens.") (citation omitted). The docket sheet amply supports the conclusion that BANA has repeatedly sought to enforce the foreclosure judgment and defeat the Dasoviches' attempts to thwart that enforcement.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1976 OK CIV APP 3, 546 P.2d 285, PRODUCERS GRAIN CORPORATION v. CARROLL
Discussed
 2015 OK CIV APP 70, 358 P.3d 288, PELLEBON v. STATE ex rel. BOARD OF REGENTS
Discussed at Length
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1935 OK 869, 50 P.2d 357, 174 Okla. 356, PASCHAL INV. CO. v. ATWATER
Discussed
 2004 OK 7, 85 P.3d 841, FANNING v. BROWN
Discussed
 2011 OK 61, 258 P.3d 516, DILLINER v. SENECA-CAYUGA TRIBE OF OKLAHOMA
Discussed
 2012 OK 2, 270 P.3d 155, WILSON v. STATE ex rel. STATE ELECTION BOARD
Discussed
 2012 OK 113, 291 P.3d 623, VAUGHAN v. GRAVES
Discussed
 1978 OK 117, 584 P.2d 218, CONCANNON v. HAMPTON
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 706, Judgments as Liens - Filing - Execution
Cited
 12 O.S. 721, Filing and Status of Foreign Judgments
Cited
 12 O.S. 725, Optional Procedure
Cited
 12 O.S. 735, Must Be Issued within Five Years or Judgment Becomes Dormant - Inapplicable to Municipalities
Cited
 12 O.S. 2012, Defenses and Objections - When and How Presented - By Pleading or Motion
Discussed


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA